BURLINGTON STATE BANK et al. v. MARLIN NAT. BANK et al.

(No. 5965.)

(Court of Civil Appeals of Texas. Austin. Nov. 20, 1918. Rehearing Denied Jan. 15, 1919.)

1. JUDGMENT ☞582 — EFFECT — MERGER OF CAUSE OF ACTION.

Where suit has been brought and judgment obtained, the original cause of action is merged in the judgment.

2. JUDGMENT ☞948(2)—RES JUDICATA—DEMURRER—SUFFICIENCY.

A petition held sufficient against demurrer to state a cause of action on a note, though as a matter of fact plaintiffs had previously recovered a judgment on such note, etc., where petition did not mention such fact.

3. APPEAL AND ERROR ☞1056(1)—REVIEW—HARMLESS ERROR.

Exclusion of evidence as to the existence of a judgment held harmless if erroneous, where the judgment had become dormant.

4. JUDGMENT ☞853(1) — "DORMANT JUDGMENT."

A dormant judgment is one which has not been satisfied or extinguished by lapse of time, but which has remained so long unexecuted that execution cannot be issued upon it without first reviving the judgment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dormant Judgment.]

5. JUDGMENT ☞486(1)—DORMANT JUDGMENT —COLLATERAL ATTACK.

A dormant judgment is not void, but only voidable, and for that reason it cannot be attacked in a collateral proceeding.

6. JUDGMENT ☞486(1)—DORMANT JUDGMENT —ATTACK.

As a general rule, no one has such an interest in a dormant judgment which is merely voidable that he can attack the same, except the parties thereto or their privies.

7. JUDGMENT ☞802 — LIEN — LIABILITY OF PERSON CONVERTING PROPERTY.

One who converted mortgaged property to his own use, the property being subject to prior lien in favor of judgment creditors, is liable to such creditors to the extent of the value of the property converted, not to exceed the amount of their judgment.

8. CHATTEL MORTGAGES ☞49(2) — DESCRIPTION—SUFFICIENCY.

A chattel mortgage describing the property as "one white horse about 16 hands high, branded ———," is void for want of sufficiency of description.

9. CHATTEL MORTGAGES ☞49(1) — DESCRIPTION—SUFFICIENCY.

A chattel mortgage describing the property as "one span brown horse mules, bought of said B. & B.," who were the mortgagees, held sufficient as against any one who had notice of the mortgage.

10. APPEAL AND ERROR ☞1151(2)—REVERSAL —GROUNDS.

Where a judgment was excessive to the amount of $38, and the error is plainly discernible, held that that is not ground for reversal, as the judgment might be reformed and affirmed.

11. CHATTEL MORTGAGES ☞157(2)—MORTGAGEE IN GOOD FAITH—EVIDENCE.

In an action between conflicting lienholders, evidence held insufficient to sustain a verdict to the effect that appellant, a chattel mortgagee, did not take its mortgage in good faith.

12. CHATTEL MORTGAGES ☞117—CONSTRUCTION—DESCRIPTION.

A crop mortgage describing the property as "10 bales of cotton, now being picked and to be ginned," covers cotton which was then in the process of being picked, and is not restricted to such cotton as was being separated from the stalk on the day of execution.

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action between the Burlington State Bank and others and the Marlin National Bank and others. From a judgment for the latter, the former appeal. Reversed and remanded.

See, also, 166 S. W. 499.

W. A. Morrison, of Cameron, for appellants.

Roy Baskin, of Cameron, for appellees Batte & Baskin.

W. E. Rogers, of Marlin, for appellee Marlin Nat. Bank.

### Findings of Fact.

JENKINS, J. 1. On October 15, 1909, Ben Johnson purchased two mules from Batte & Baskin, in Cameron, Milam county, Tex., and to secure the purchase price of same executed a mortgage to them on, among other things, said mules and a horse, describing the same as "one span brown horse mules bought of said Batte & Baskin, and one white horse about sixteen hands high, branded ————." Johnson at that time lived on the Tarver-Henslee farm, in Falls county, about two miles north of the line between Falls and Milam counties. This mortgage was filed for record in Milam county October 22, 1909. It was never filed for record in Falls county.

2. On November 1, 1909, Ben Johnson executed his note to the Burlington State Bank, hereinafter referred to as the Burlington Bank, for $500, and to secure the same executed a mortgage on property described as follows:

"One black horse mule, about fifteen hands high, 6 years old; one black horse mule, 6 years old, about fifteen hands high; one black horse mule, 4 years old, about fifteen hands high; one black mare mule, 4 years old, about fifteen hands high; one bay horse mule, about fifteen hands high, 5 years old; one blue horse, about fifteen hands high, 7 years old; one sorrel horse, about fifteen hands high, 7 years old; one sorrel horse, about fifteen hands high, 8 years old; also my entire crop to be grown on the Henslee farm in 'Falls, Texas,' consisting of 185 acres to be planted in cotton and 20 in corn, all to be grown during the year 1910, owned entirely by us, without any incumbrance."

3. This mortgage was duly filed in Falls county, December 21, 1909.

4. On November 1, 1909, Ben Johnson executed another mortgage to the Burlington Bank, on "one gray horse about six years old and about sixteen hands high," to secure a note of $25. This mortgage was duly filed for record in Falls county, December 21, 1909.

5. The two mules described in the mortgage to Batte & Baskin as brown horse mules were the same as the two described in the mortgage to the Burlington Bank as black mules, and the horse described in the mortgage to Batte & Baskin as a white horse was the same as the one described in the mortgage to the Burlington Bank as a gray horse. These mules and the horse were of such colors that the descriptions as to colors given in each mortgage would fit them fairly well.

6. In December, 1910, the Burlington Bank took possession of, among others, the two horse mules, and the white or gray horse mentioned in its mortgage, and in the mortgage to Batte & Baskin, and sold the same. The market value of said mules at the time they were so taken possession of was $300, and of said horse was $60.

7. On October 7, 1910, Ben Johnson, to secure his note for $615 to the Marlin National Bank, hereinafter referred to as the Marlin Bank, gave said bank a mortgage on the following property:

"One blk. horse mule, 6 years old, about 15½ hands high, named Tobe; one blk. horse mule, 7 years old, about 15½ hands high, named Henry; one blk. mare mule, 5 years old, about 15 hands high, named (Kit); one blk. mare mule, 6 years old, 15 hands high, named (Bet); one light bay mare mule, 5 years old, 15 hands high, named (Ella); one light bay mare mule, 5 years old, 15 hands high, named (Kate); one roan horse, 6 years old, 16½ hands high, named (Henry); and ten bales of cotton, crop of 1910, now being picked and to be ginned at Highbank, in Falls county, Texas."

8. This mortgage was duly filed in Falls county, October 13, 1910.

9. During the years 1908, 1909, and 1910 Ben Johnson was a tenant on the Tarver-Henslee farm, in Falls county, during which time Tarver-Henslee were also in the mercantile business at Rosebud, in Falls county, near said farm, and they furnished Johnson provisions and other things necessary for him to carry on the farm.

10. The Marlin Bank brought suit against Ben Johnson on his note and to foreclose its mortgage. By amendment it made the Burlington Bank, the Planters' National Bank of Rosebud, Tex., and Tarver-Henslee parties defendant. The Burlington Bank impleaded Batte & Baskin and others not necessary to mention, as they were dismissed from the suit.

11. The case was tried July 13, 1913, and resulted in a judgment against Ben Johnson in favor of the Marlin Bank for $853.49, in favor of the Burlington Bank for $162.26, and in favor of Batte & Baskin for $259, with interest on each of said judgments at the rate of 6 per cent. per annum. There were also judgments entered as between the other parties to the suit, from which there was an appeal. The judgments as above stated against Johnson were affirmed on appeal by this court April 1, 1914, and reversed as to other matters (see 166 S. W. 499).

12. No execution has ever been issued on either of the judgments against Johnson, by reason of which said judgments were dormant when this case was tried, June 2, 1917.

13. This cause was retried by the district court of Falls county, and submitted to a jury on special issues; and, in accordance with the verdict of the jury, the court entered judgment substantially as follows: (a) That the plaintiff the Marlin Bank take nothing as against the Burlington Bank; (b) that plaintiff recover of Tarver-Henslee $514.35, with 6 per cent. interest thereon from Jan-

uary 1, 1911; (c) that the Burlington Bank take nothing against Tarver-Henslee; (d) that Batte & Baskin recover against the Burlington Bank $350, with 6 per cent. interest thereon from January 1, 1911, not exceeding however, the amount of their debt against Johnson, which is found to be $358.-41; (e) that plaintiff take nothing against Batte & Baskin; (f) that payments made by Tarver-Henslee under this judgment be credited on plaintiff's judgment against Johnson; (g) that payments made by the Burlington Bank to Batte & Baskin be credited on their judgment against Johnson; (h) that execution shall first issue against Johnson before being issued against either Tarver-Henslee or the Burlington Bank.

14. The Burlington Bank and Tarver-Henslee appealed from said judgment.

### Opinion.

Appellants by their assignments Nos. 1, 2, and 3 present the issue that the judgment herein against them is erroneous, for the reason that the former judgment herein in favor of Batte & Baskin against Ben Johnson merged their note in said judgment, and the same, having been affirmed on the former appeal, is res judicata, and therefore said note could not be made the basis of a judgment on the trial of this cause; that Batte & Baskin, having filed an amended petition herein subsequent to the affirmance of said judgment, in which they sought judgment against Johnson on the note, and not on the judgment, and did not seek to revive or reform said judgment, showed no cause of action herein against said Johnson; and that, as their petition shows that primarily they had no cause of action against these appellants, they were not entitled to judgment against them herein.

These objections were raised by demurrer, by objections to the evidence, by requested peremptory instructions, and by motion for new trial.

[1] It is true, as contended by appellants, that, when a suit has been brought and a judgment obtained, the original cause of action is merged in the judgment. United States v. Leffler, 11 Pet. 98, 9 L. Ed. 647; Hamer v. Ry. Co., 244 U. S. 266, 37 Sup. Ct. 511, 61 L. Ed. 1129; Mason v. Eldred, 6 Wall. 231, 18 L. Ed. 785; Neill v. Tarin, 9 Tex. 259; Drane v. Gunymere, 2 Posey, Unrep. Cas. 500.

In United States v. Leffler, supra, the court said:

"If there be any one principle of law settled beyond all question, it is this, that whensoever a cause of action, in the language of the law, transit in rem judicatam, and the judgment thereupon remains in full force unreversed, the original cause of action is merged and gone forever."

[2-6] The petition of Batte & Baskin did not mention the former judgment against Johnson. As a suit upon his note it was good against demurrer. Appellants alleged such judgment and the evidence showed it. It also showed that such judgment was unsatisfied, and, had the excluded testimony been allowed by the court, it would have shown that the judgment against Johnson was dormant. This evidence was excluded on the ground that it was immaterial. If such evidence was material, we think its exclusion was harmless, for the reason that the date of such judgment, together with the fact that there was no evidence that execution had ever been issued thereon, showed that it was dormant. A judgment in this state, upon which no execution has been issued within 12 months after its rendition, is dormant. A dormant judgment is one which has not been satisfied nor extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment. Spiller v. Hollinger, 148 S. W. 340.

The question presented by the facts of the instant case is, could any one but Johnson take advantage of such dormancy? A dormant judgment is not void, but only voidable, for which reason it cannot be attacked in a collateral proceeding. Meader v. Aringdale, 58 Tex. 450; Riddle v. Turner, 52 Tex. 150; Boggess v. Howard, 40 Tex. 159; Taylor v. Doom, 43 Tex. Civ. App. 59, 95 S. W. 5; Maverick v. Flores, 71 Tex. 110, 8 S. W. 637.

As a general rule, no one has such interest in a judgment that is merely voidable, as that he may attack the same, except the parties thereto or their privies. The effect of the judgment on the former appeal and that rendered upon the last trial is that there are two judgments against Johnson in favor of Batte & Baskin on the same cause of action, but, as Johnson is not complaining of this, we do not see why appellants should do so. Batte & Baskin sought to hold appellants only secondarily liable, and the judgment, as shown by the thirteenth section of our findings of fact, supra, does so.

Appellants, by their fifteenth assignment of error, make the same contention as to the judgment in favor of the Marlin Bank. The only difference between the petition of Batte & Baskin and the Marlin Bank is that the latter sought judgment on both Johnson's note and its former judgment. Johnson did not complain of this. The judgment in favor of the Marlin Bank against appellant Tarver-Henslee was secondary to its judgment against Johnson.

[7] Appellees' alleged cause of action against appellants was not on the debt owing by judgment, but for conversion of property mortgaged by Johnson. If their judgment against Johnson for their debt is val-

id, and the appellants converted property upon which appellees had a prior mortgage lien, they are entitled to judgment against appellants, if they converted the mortgaged property, or any part thereof, to their own use, to the extent of the value of the property so converted, not to exceed the amount of their debt against Johnson.

For the reasons stated, we overrule appellants' first, second, third, and fifteenth assignments of error.

[8, 9] Appellants contend that the mortgage in favor of Batte & Baskin was void for want of description of the property therein attempted to be mortgaged.

We sustain this contention as to the white horse. (See findings of fact, Sec. 1.) A mortgage of an animal which is described only by its age, height, and color, the same being common to animals of that species, is void. Burlington Bank v. Marlin Bank, 166 S. W. 502; Maloney v. Greenwood, 186 S. W. 228; Johnson v. Brown, 65 S. W. 485; Young v. Bank, 97 Mo. App. 576, 71 S. W. 714; Ames v. Chinn, 15 Tex. Civ. App. 88, 38 S. W. 249; Pitluk v. Butler, 156 S. W. 1136.

We think, however, that the further description of the mules as being bought from Batte & Baskin, whose residence is given in the mortgage, is sufficient as against ony one who had notice of such mortgage. The reasonable inference from the words, "bought from Batte & Baskin," is that they were so bought by the mortgagee.

[10] The amount of the judgment to which Batte & Baskin were entitled against Ben Johnson was determined by the former judgment, to wit, $259, with interest thereon at the rate of 6 per cent. per annum from July 13, 1913. The court rendered judgment herein for $358.41, which was excessive to the amount of $38.89. This, however, would not be cause for reversal, as the judgment, if otherwise correct, could be reformed and affirmed.

[11] After careful consideration, we have arrived at the conclusion that we should sustain appellants' assignment that the verdict of the jury that the Burlington Bank was not a mortgagee in good faith is not supported by the evidence. There are some contradictions as to minor matters in the testimony of Jones, the cashier of the bank, and Johnson. In deference to the verdict of the jury, we must take it for granted that they believed Johnson as to the contradictory matters. After excluding Jones' testimony as to matters wherein he was contradicted by Johnson, the facts shown by the record are substantially as follows:

About the last of September, 1909, Johnson stated to Jones that he wanted to go to Cameron to pay out some mules that his brother owned, and desired to borrow $300 with which to buy the mules. Jones agreed to loan him the money and take a mortgage on the mules, if they were clear. On the evening of that day the cashier of a bank in Cameron called Jones over the phone, and asked if the Burlington Bank would honor Ben Johnson's draft for $300, and Jones told him it would. A draft for that amount was drawn by Johnson and paid by the bank on October 4, 1909. About a week afterwards Johnson executed the mortgage to the bank on some mules and other stock to secure the $300 note, which was due in 30 days. On November 1, 1909, Johnson came to the bank, and said that he could not pay the $300, and asked for a loan of $200 more, the whole to be carried a year, offering to mortgage as security therefor certain stock which he claimed to have. Jones agreed to this, and took Johnson's note for $500 and the mortgage set forth in subdivision No. 2 of the findings of fact, supra. The first mortgage did not include the two brown or black horse mules, for the obvious reason that Johnson had not then bought them. As Jones was informed before the first mortgage was taken that Johnson was going to buy the mules that day in Cameron, it might be said that he should have phoned to the county clerk to know if there was any mortgage against the mules that Johnson was buying, given either by the party from whom Johnson was buying them, if he had known or could have ascertained who such party was, or by Johnson himself. If he had done so, the reply would have been there was not. Before the second mortgage was given to the bank Johnson had bought the two horse mules from Batte & Baskin and given them a mortgage on them. The mortgage, not being filed in Falls county, was not constructive notice to Jones. Had he inquired of the clerk of Milam county at that time, he would have learned of this mortgage; but why should the bank inquire of the clerk of Milam county at that time as to whether a chattel mortgage had been executed by a citizen of Falls county? It is not made to appear that Jones knew that Johnson had bought any mules there since about September 1st, or that he had been back to Cameron, or that he had ever bought any mules from Batte & Baskin. The mortgage given by Johnson to the Burlington Bank stated that there were no liens on the property mortgaged, and, Jones, in accordance with his custom, required Johnson to swear to this.

So far as we are able to see, the record does not disclose any fact calculated to arouse the suspicion of a reasonably prudent man, which, if followed up, would have led Jones to a knowledge of the existence of the mortgage in favor of Batte & Baskin. Jones' testimony makes a stronger case for the bank than above stated, but we have not taken into consideration any of his testimony where it was contradicted by Johnson. It is not

our province to pass on the credibility of witnesses or the weight to be given to their testimony.

[12] Appellants contend that the description in the mortgage to the Marlin Bank, "ten bales of cotton crop of 1910 now being picked and to be ginned at Highbank," applies only to such cotton as was being separated from the stalk on that day.

To this we do not agree. We think it meant the cotton that was then in process of being picked, though it may have taken some time to finish the job.

The testimony in support of the judgment in favor of the Marlin Bank against Tarver-Henslee is not very satisfactory, and, as this case must be reversed in part, we have concluded to reverse and remand the entire case for a new trial.

Reversed and remanded.