# NO. 12-12-00291-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *BUSTER FITZGERALD,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *OPINION*

In this original mandamus proceeding, Buster Fitzgerald challenges the trial court's judgment finding him in contempt for failing to comply with an order compelling discovery. We deny the petition.[1]

## BACKGROUND

On March 4, 1988, the trial court signed an agreed judgment awarding Tyler National Bank approximately $40,000.00 from Fitzgerald. In 1990, the FDIC, as liquidator of Tyler National Bank, assigned the judgment to The Cadle Company.

Writs of execution were issued in 1995 and 2005, but both were returned by the sheriff after attempts to serve Fitzgerald were unsuccessful. In August 2011, Cadle sent Fitzgerald a request for production of documents and a deposition notice. Fitzgerald did not respond, and Cadle filed a motion to compel. Cadle sent Fitzgerald a copy of the motion, the supporting brief, and notice of the hearing on the motion, but again, Fitzgerald failed to respond. Nor did he appear in person at the hearing. However, Tyler attorney Steve Mason, with the Flowers Davis law firm, attended and argued on Fitzgerald's behalf. After the hearing, the trial court rendered an order granting Cadle's motion to compel. The order directed Fitzgerald to produce all

---

[1] The real party in interest is The Cadle Company. The respondent is the Honorable Randall L. Rogers, Judge of the County Court at Law No. 2, Smith County, Texas.

documents responsive to Cadle's request for production and to appear for his deposition on the dates specified in the order.

On the date for producing the requested documents, and without doing so, Fitzgerald filed a "pro se" combined motion for reconsideration of Cadle's motion to compel and for a protective order based on various objections to the requested discovery. He did not appear for his deposition, and Cadle filed a motion for contempt and for sanctions.

The trial court set a hearing on Cadle's motion, and issued a show cause order and writ directing Fitzgerald to appear at the hearing. Fitzgerald did not comply. Instead, J. Bennett White, his counsel in this original proceeding, attended the hearing. White informed the court that he did not represent Fitzgerald, but he had filed a motion for leave to appear as "amicus curiae" for him. According to the motion, White sought to "call[] the Court's attention to the fact that it lacks jurisdiction over the person of Buster Fitzgerald with regard to the contempt proceedings filed by [Cadle]." After hearing argument on White's motion, the court denied it.

Additionally, the trial court found Fitzgerald in contempt for failing to attend the show cause hearing and ordered a writ of attachment. Fitzgerald "turned himself in," accompanied by White as his counsel. The court set another show cause hearing, at which time it would also hear Fitzgerald's motion for reconsideration and protective order (motion for reconsideration). Fitzgerald appeared at that hearing accompanied by White as his counsel. The court denied Fitzgerald's motion for reconsideration and found him in contempt for violating the court's order compelling him to produce documents and appear for his deposition. As punishment, the court ordered Fitzgerald to pay Cadle's reasonable attorney's fees in the amount of $5,000.00 and court costs "for these proceedings." The court also directed Fitzgerald to produce the requested documents and to appear for his deposition on the dates specified in the order. Fitzgerald posted a $25,000.00 surety bond to suspend the contempt judgment and filed a notice of appeal.[2] Approximately seven months later, he filed a petition for writ of mandamus.

## PREREQUISITES TO MANDAMUS

Mandamus relief is appropriate only when there has been a clear abuse of discretion by the trial court for which there is no adequate remedy by appeal. *In re State*, 355 S.W.3d 611,

---

[2] We dismissed Fitzgerald's appeal for want of jurisdiction. *See generally* ***Fitzgerald v. The Cadle Company***, No. 12-12-00096-CV, 2014 WL 962553 (Tex. App.–Tyler Mar. 12, 2014, no pet. h.) (mem. op.).

613 (Tex. 2011) (orig. proceeding). Ordinarily, the relator has the burden to establish both of these prerequisites to mandamus. *See **In re E. Tex. Med. Ctr. Athens***, 154 S.W.3d 933, 935 (Tex. App.–Tyler 2005, orig. proceeding). But a contempt judgment is not appealable. ***In re Office of Attorney Gen. of Tex.***, 215 S.W.3d 913, 915 (Tex. App.–Fort Worth 2007, orig. proceeding). When, as here, no confinement is involved, a contempt judgment is reviewable only by mandamus. *See **In re Long***, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding). Accordingly, in this proceeding, Fitzgerald must satisfy only the first prerequisite to mandamus– a clear abuse of discretion by the trial court. *See **id.***

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. ***In re Olshan Found. Repair Co., LLC***, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding). Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. ***Id.*** Regarding factual issues, the review is much more deferential. *See **id.*** Ordinarily, the reviewing court must defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions. ***Id.*** at 839-40; ***In re Raymond James & Assocs., Inc.***, 196 S.W.3d 311, 318 (Tex. App.–Houston [1st Dist.] 2006, orig. proceeding). To determine whether there is an abuse of discretion, we review the entire record. ***In re University Interscholastic League***, 20 S.W.3d 690, 691-92 (Tex. 2000) (orig. proceeding).

When a contempt order is challenged, mandamus relief is available if the relator shows that the order underlying the contempt judgment is void, or that the contempt judgment itself is void. *See **Snodgrass v. Snodgrass***, 332 S.W.3d 653, 663 (Tex. App.–Houston [14th Dist.] 2010, no pet.).

## CONTEMPT

Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority. ***Ex parte Chambers***, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Direct contempt occurs in the presence of the court, and constructive contempt occurs outside the court's presence. ***In re Reece***, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). The contempt alleged here, violation of a written court order outside the presence of the court, is constructive contempt. *See **Ex parte Chambers***, 898 S.W.2d at 259.

Contempt is not to be presumed, but rather is presumed not to exist. ***Deramus v. Thornton***, 333 S.W.2d 824, 830 (Tex. 1960) (orig. proceeding). We cannot weigh the evidence supporting the trial court's contempt finding to determine whether it preponderates for or against the relator. ***In re Long***, 984 S.W.2d at 626-27. However, we can determine whether the contempt judgment is void. ***Id.***; ***Ex parte Chambers***, 898 S.W.2d at 259.

## HEARING ON THE MOTION TO COMPEL

In his first issue, Fitzgerald argues the trial court had no legitimate basis for subjecting him to its ruling on Cadle's motion to compel. He contends that Mason's participation in the hearing cannot establish his authority to act as his representative and that he was not properly served with notice of the hearing. We construe Fitzgerald's argument as a contention that the order granting the motion to compel is void.

### Authority of Counsel

It is well established in Texas that an attorney appearing for a party is presumed to be duly authorized to do so. *See, e.g.*, ***West v. City Nat'l Bank of Birmingham***, 597 S.W.2d 461, 463 (Tex. Civ. App.–Beaumont 1980, no writ); ***Hidalgo Cnty. Drainage Dist. No. 1 v. Magnolia Petroleum Co.***, 47 S.W.2d 875, 876 (Tex. Civ. App.–San Antonio 1932, writ ref'd). This presumption prevails until it is conclusively shown by competent evidence that the attorney was not authorized to appear for the litigant. ***West***, 597 S.W.2d at 463; ***Hidalgo Cnty. Drainage Dist. No. 1***, 47 S.W.2d at 876. "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." ***City of Keller v. Wilson***, 168 S.W.3d 802, 816 (Tex. 2005).

The general rule is that the testimony of an interested witness, though not contradicted, does no more than raise a fact issue to be determined by the fact finder. *See* ***Ragsdale v. Progressive Voter League***, 801 S.W.2d 880, 882 (Tex. 1990). An exception applies when the testimony is not contradicted by any other witness or attendant circumstances, is clear, direct and positive, and is free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. ***Id***. When the exception applies, the testimony is taken as true as a matter of law. ***Id***. But failure to contradict does not necessarily preclude a holding that a fact issue is raised when, for example, there are circumstances shown in the record that tend to discredit or impeach the

4

testimony of the interested witness. *See id*. (citing ***Anchor Cas. Co. v. Bowers***, 393 S.W.2d 168, [170] (Tex. 1965)).

## Mason's Appearance and Participation

At the hearing on Cadle's motion to compel, Mason informed the trial court that Celia Flowers, another attorney with Flowers Davis, had been "engaged," but not "until just recently," to represent Fitzgerald on the motion to compel. Mason appeared because Flowers was out of town. According to Mason, he had tried to get the hearing postponed to see if the parties could resolve the dispute. Cadle's counsel confirmed that she and Mason had discussed the possibility of postponement.

Mason explained that postponement was necessary for two reasons. First, there was a deposition in another case that might be helpful because Fitzgerald's financial situation had not changed since then. Second, Cadle's requests were "very broad." Mason told the court that "we just want the opportunity to try to negotiate and deal with the requests with counsel before we are–know that there is a problem such that needs an order to compel."

Mason recounted his conversations with Cadle's counsel during the preceding two days in which they discussed Mason's representation of Fitzgerald and possible postponement of the hearing. He also informed the court that he had "just [seen] the motion to compel [himself]" because he had obtained it from Cadle's counsel only one or two days before the hearing. Mason pointed out that Cadle's request for production and deposition notice were included in a single document, and argued that this was confusing. He reminded the court that "we weren't engaged by [Fitzgerald] when he got this," and suggested that Fitzgerald possibly would not have understood that two separate dates were involved–one for producing documents and another for his deposition.

The trial court granted Cadle's motion to compel. However, the court agreed with Mason that the notice was confusing and declined to rule on Cadle's request for attorney's fees, which was included in its motion to compel. At the court's request, counsel agreed on dates for Fitzgerald's production of documents and deposition. The court ordered that Fitzgerald produce the requested documents and appear for his deposition on the agreed dates, which were included in the order.

5

**Fitzgerald's Actions**

At the contempt hearing, Fitzgerald testified that Mason called him at 7:00 p.m. on the day of the hearing and told him about the trial court's ruling. He testified that he had "zero" prior involvement with Mason–"[n]ever talked to him, never met him." He admitted that the Flowers Davis law firm had represented him on another matter, but said he worked with Flowers on that. Fitzgerald testified that Mason told him Flowers had sent him to the hearing at the last minute. According to Fitzgerald, Mason told him "he wished he had gotten to talk to me because he would have known that I hadn't been served or anything. And he didn't know that so he couldn't tell the Judge that." He denied having any contact with Flowers about the hearing or about any attempt by Cadle to collect the judgment and expressed surprise that Flowers sent Mason to the hearing. He also denied hiring Flowers, Mason, or anyone else at the Flowers Davis law firm to represent him regarding the judgment Cadle was attempting to collect. He stated that "probably within a week or so" after Mason's call, he went to Mason's office and picked up a copy of the order granting the motion to compel.

Fitzgerald testified further that prior to the date for the deposition, he went to see White (his counsel in this proceeding), who started "guiding [him] somewhat." He stated that after seeing White, he called Cadle's counsel to inform her that he would not be at the deposition because he had not been served. Fitzgerald also stated that prior to the date for the deposition, "[w]e filed our motion or whatever you call it, you know, stating because of these issues it wasn't any good." This appears to be a reference to Fitzgerald's "pro se" motion for reconsideration that was filed on the date for production of the requested documents.

In this motion, Fitzgerald asserted that he was never served with a copy of Cadle's motion to compel and received no notice of the hearing on the motion. He alleged further that several days after the hearing, he received a copy of the trial court's order granting the motion. He explained that "the judgment entered by this Court on March 4, 1988 has become dormant and was not revived by scire facias within two (2) years of its becoming dormant; therefore, any further collection efforts on that judgment are time-barred." And finally, he urged that the protective order was necessary because "the Motion to Compel seeks documents that exceed the scope of permissible recovery and that the Order Granting the Motion to Compel does not provide [Fitzgerald] with a reasonable period of time in which to compile or assemble responsive documents that are within his care, custody, or control."

6

## The Trial Court's Ruling

In his mandamus petition, Fitzgerald reasserts his contention that Mason lacked authority to represent him. Specifically, he argues that "[t]he only evidence before the trial court was that Mason was not authorized to represent Fitzgerald at the hearing on [Cadle's] Motion to Compel. [Cadle's counsel] has admitted that Fitzgerald did not engage in any conduct to demonstrate Flowers or Mason were authorized to act as his representative in the trial court proceeding.[3] Accordingly, Mason's voluntary attendance at the October 13, 2011 hearing, without any contact from or consultation with Fitzgerald, cannot establish [Mason's] authority to act on Fitzgerald's behalf." By this argument, Fitzgerald contends, at least implicitly, that he conclusively showed Mason lacked authority to represent him at the October 13 hearing and, therefore, the trial court could not have reached the opposite conclusion. Underlying this argument is Fitzgerald's presupposition that the trial court lacked discretion to disbelieve his testimony.

It is true that Fitzgerald's testimony about Mason's lack of authority was uncontroverted. Fitzgerald was the sole witness at the contempt hearing. But Fitzgerald is an interested witness. As such, his testimony, though not contradicted by other witnesses, did nothing more than raise a fact issue unless the trial court found that it was clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *See* **Ragsdale**, 801 S.W.2d at 882.

Here, the record shows circumstances that tend to cast suspicion on Fitzgerald's testimony. For example, Fitzgerald gave no indication in his testimony that any part of his conversation with Mason pertained to Mason's lack of authority to represent him. Additionally, Fitzgerald did not file his motion for reconsideration until approximately two weeks after Mason gave him a copy of the order granting Cadle's motion to compel. This was approximately three weeks after the hearing. The record also shows that Fitzgerald consulted with White on the motion for reconsideration, and that the motion included cogent legal argument and citations to authority consistent in substance and form with documents prepared by an attorney. Yet, the motion contains no challenge to Mason's authority, even though complaints about lack of notice are waived when a party appears by counsel and participates in the hearing without objection.

---

[3] Fitzgerald does not cite the portion of the record in which this alleged admission occurred. We note, however, that at the contempt hearing, Cadle's counsel forcefully and unwaveringly argued that Mason was authorized to represent Fitzgerald at the hearing on the motion to compel. Counsel makes these same arguments in this proceeding.

7

*See, e.g., Cox v. Realty Dev. Corp.*, 748 S.W.2d 492, 493 (Tex. App.–Dallas 1988, no writ); ***Hill v. W.E. Brittain, Inc.***, 405 S.W.2d 803, 807 (Tex. Civ. App.–Fort Worth 1966, no writ).

The record shows further that in his opening statement at the contempt hearing, White identified Fitzgerald's "primary defense to the contempt" as his lack of notice of the [hearing on Cadle's motion to compel] until it occurred." White also relied, in part, on the assertion that the judgment was dormant and stated that, "at the very least, [Fitzgerald] should have an opportunity to participate in the hearing and the Motion to Compel before being subject to contempt penalties for failure to comply with that order." Cadle's counsel noted in her opening statement that Mason represented Fitzgerald at the hearing. Fitzgerald then addressed Mason's alleged lack of authority in his direct testimony.

These circumstances support an implied finding that Fitzgerald's testimony regarding Mason's lack of authority, though uncontroverted by any other witness, was not credible. Consequently, Fitzgerald did not establish that the trial court could have reached only one decision in assessing his credibility. *See Walker*, 827 S.W.2d at 839-40; ***In re Raymond James & Assocs., Inc.***, 196 S.W.3d at 318. Thus, the trial court reasonably could have determined that Fitzgerald's testimony was insufficient to rebut the presumption in favor of Mason's authority to represent Fitzgerald at the hearing on the motion to compel. Because the presumption in favor of Mason's authority prevails, and Mason did not assert Fitzgerald's lack of notice at the hearing, the record also supports an implied finding that Fitzgerald's alleged lack of notice was waived. *See, e.g.*, ***Cox***, 748 S.W.2d at 493; ***Hill***, 405 S.W.2d at 807. Therefore, Fitzgerald has not shown that the order granting the motion to compel is void.

Because Fitzgerald has not shown that the trial court found him in contempt for violating a void order, he has not shown a clear abuse of discretion by the trial court. Accordingly, we overrule Fitzgerald's first issue.

### THE AGREED JUDGMENT

In his second issue, Fitzgerald urges that the 2005 writ of execution was ineffective to extend the period during which the agreed judgment could be enforced. Consequently, he maintains that the agreed judgment is dormant and the trial court abused its discretion by allowing discovery on a dormant judgment. Thus, he argues that the judgment is no longer enforceable.

**Dormant Judgments**

"A dormant judgment is one which has not been satisfied nor extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment." *Burlington State Bank v. Marlin Nat'l Bank*, 207 S.W. 954, 956 (Tex. Civ. App.–Austin 1918, no writ). A judgment becomes dormant if a writ of execution is not issued within ten years after the rendition of the judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a) (West Supp. 2013). If a writ of execution is issued within ten years, but a second writ is not issued within ten years after the first was issued, the judgment becomes dormant ten years after the first writ was issued. *Id*. § 34.001(b) (West Supp. 2013).

It is essential that a writ of execution describe the judgment and show against whom it is to operate. *Collins v. Hines*, 99 S.W. 400, 402 (Tex. 1907). If the writ describes a judgment "differing materially from that produced[,]" it is a nullity. *Id.* But an invalid writ of execution will not prevent the judgment from becoming dormant. *See Bryan v. Bryan*, 262 S.W.2d 736, 743 (Tex. Civ. App.–Texarkana 1953, writ ref'd n.r.e.). And a dormant judgment is not void solely by reason of its dormancy. *Burrows v. Miller*, 797 S.W.2d 358, 361 (Tex. App.–Tyler 1990, no writ); *Burlington State Bank*, 207 S.W. at 956; *see also Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) ("A judgment is void only when it is shown that the court had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court."). Instead, it is merely voidable. *Burlington State Bank*, 207 S.W. at 956.

A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the judgment in a proceeding instituted for that purpose. *PNS Stores Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012); *Crawford v. McDonald*, 88 Tex. 626, 630 (Tex. 1895). A collateral attack on a judgment is an attempt to avoid its binding force in order to obtain specific relief that the judgment currently impedes. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005); *Crawford*, 88 Tex. at 630. Examples of a collateral attack include when a party seeking to dissolve a writ of garnishment assails the underlying judgment. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 19-20 (Tex. 1994).

A voidable judgment is subject to direct attack only; it cannot be collaterally attacked. *See Rivera*, 379 S.W.2d at 271 ("A litigant may attack a void judgment directly or collaterally, but a voidable judgment may only be attacked directly."); *see also Burlington State Bank*, 207

S.W. at 956 (holding that dormant judgment is voidable and therefore not subject to collateral attack). It is well established that a voidable judgment is conclusive against whose rights it may affect until it is either reversed by appeal or vacated on direct attack. *See, e.g.*, *Slay v. Fugitt*, 302 S.W.2d 698, 702 (Tex. Civ. App.–Dallas 1957, writ ref'd n.r.e.); *Caplen v. Compton*, 5 Tex. Civ. App. 410, 27 S.W. 24, 25 (Galveston 1893, writ ref'd).

**The Trial Court's Ruling**

In this case, Fitzgerald challenges the 2005 writ of execution contending that (1) it did not adequately describe the agreed judgment and that (2) Cadle "apparently withheld or concealed [Fitzgerald's actual address] from the officer, thereby thwarting his efforts in serving the writ." Therefore, he asserts, the writ was insufficient to extend the time for enforcing the judgment. We need not address these arguments, however, because even if they are meritorious, Fitzgerald cannot prevail. This is because the judgment, if dormant, is voidable only (not void), cannot be challenged in a proceeding such as this (one not brought for the purpose of setting aside the judgment), and is therefore binding on the parties. *See Slay*, 302 S.W.2d at 702; *Burlington State Bank*, 207 S.W. at 956; *Caplen*, 27 S.W. at 25. Consequently, Fitzgerald has not shown that the trial court clearly abused its discretion by compelling postjudgment discovery. We overrule Fitzgerald's second issue.

## THE CONTEMPT JUDGMENT

In his third issue, Fitzgerald calls our attention to *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1994) (orig. proceeding). In *Chambers*, the court stated, in part, that when an order is violated outside a court's presence, the proof for a criminal contempt conviction must show that the violation was willful. *See id.* Fitzgerald implicitly asserts that a civil contempt conviction arising out of the same circumstances would also require proof of a willful violation. He then complains that "whether [he] could realistically fulfill the Court's directive [to comply with Cadle's request for production] is well beyond his control," but, even so, "the Court's Order makes no provision for whether any inability to comply is within Fitzgerald's control."

Fitzgerald goes on to explain that some of Cadle's requests for production require him to produce documents "in which persons or entities not parties here have a material interest." Additionally, he asserts that the definitions in Cadle's request contain repeated references to "Cadlerock" that are "confusing and threaten to prevent Fitzgerald from identifying the specific

10

documents sought."[4] Therefore, he objects that the portion of the contempt judgment directing him to comply with Cadle's request for production of documents "excludes the possibility that his inability to comply could well be due to circumstances which he cannot prevent." More specifically, he asserts that "the trial court's order potentially punishes [him] for conduct that has not yet occurred without any showing that the currently non-existent violation was willful." Consequently, he maintains that "the fundamental structure of the [Contempt] Order is improper, and the issuance of [the] improper Order was an abuse of the trial court's discretion."

A petition in an original proceeding must contain a clear and concise argument for the contentions made, with appropriate citations to authorities. TEX. R. APP. P. 52.3(h). Fulfilling this duty entails more than proffering mere conclusions. *In re Kuhler*, 60 S.W.3d 381, 384 (Tex. App.–Amarillo 2001, orig. proceeding). Instead, the rule requires that the relator provide substantive legal analysis as well as citations to authority supporting his legal arguments and conclusions. *See In re Hartigan*, 107 S.W.3d 684, 689 (Tex. App.–San Antonio 2003, orig. proceeding [mandamus denied]).

Here, Fitzgerald contends that, in the contempt judgment, the trial court should have excluded Fitzgerald's anticipated unwillful noncompliance from its directive requiring him to produce documents. As examples of the circumstances in which unwillful noncompliance is likely, he restates the objections he asserted to support his motion for a protective order.[5] Yet, Fitzgerald cites only one case, *Ex parte Chambers*, which stands for the proposition that a willful violation is necessary for a criminal contempt conviction. The remainder of his argument consists of mere conclusions unaccompanied by any discussion of applicable legal principles or controlling authority. Consequently, he has not provided the "clear and concise argument" and "appropriate citations to authorities" required by Rule 52.3(h). *See, e.g.*, *In re Hartigan*, 107 S.W.3d at 689; *In re Kuhler*, 60 S.W.3d at 384. Therefore, he has waived this issue. *See In re Hartigan*, 107 S.W.3d at 689; *In re Kuhler*, 60 S.W.3d at 384; *see also* TEX. R. APP. P. 52.3(h).

We overrule Fitzgerald's third issue.

---

[4] In the definition section of its request for production, Cadle is erroneously identified as "Cadlerock."

[5] Fitzgerald's objections did not comply with the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 193.2; *see generally In re Park Cities Bank*, 409 S.W.3d 859 (Tex. App.–Tyler 2013, orig. proceeding).

## DISPOSITION

Fitzgerald has not shown that the contempt judgment or the underlying order granting Cadle's motion to compel discovery is void. Therefore, he has not shown a clear abuse of discretion by the trial court in enforcing its order compelling discovery. *See **Snodgrass***, 332 S.W.3d at 663. Accordingly, we ***deny*** Fitzgerald's petition for writ of mandamus.

In its response to Fitzgerald's petition, Cadle requests that its attorney's fees and costs in this proceeding be awarded against Fitzgerald. We overrule Cadle's request.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 30, 2014

NO. 12-12-00291-CV

**BUSTER FITZGERALD**,
Relator
v.
**HON. RANDALL L. ROGERS**,
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by **BUSTER FITZGERALD**, who is the defendant in Cause No. 28,156-A, pending on the docket of the County Court at Law #2 of Smith County, Texas. Said petition for writ of mandamus having been filed herein on September 6, 2012, and the same having been duly considered, because it is the opinion of this Court that a writ of mandamus should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **DENIED**.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*