# NO. 12-18-00012-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|                          |   |                       |
|--------------------------|---|-----------------------|
| *IN RE: K.M.,*           | § |                       |
|                          | § | *ORIGINAL PROCEEDING* |
| *A CHILD*                | § |                       |

## *MEMORANDUM OPINION*

A.S., Relator, filed this original proceeding to challenge Respondent's temporary order in a suit affecting the parent-child relationship.[1]  We conditionally grant the writ.

## BACKGROUND

In May 2017, R.M. filed an original petition in suit affecting the parent-child relationship. A.S. and R.M. are the parents of K.M.  In his supporting affidavit, R.M. alleged that A.S. admitted being addicted to prescription pain medications, including oxycodone and hydrocodone.  R.M. stated that A.S. consumes at least six pills of each medication daily and obtains the pills from both a doctor and street dealers who deliver pills to A.S. once or twice weekly.  According to R.M., some pills include extended release morphine.  He stated that A.S.'s two other children know the dealer's name and he has evidence of A.S. trading and selling pills. R.M. averred as follows:

> When she is on these medications, she is very hyperactive as if she is on speed, and when she runs out, she becomes extremely angry, irrational, and verbally abusive towards the children, and neglects the children's basic needs and care. There have been numerous times when the children have called me when [A.S.] has been passed out due to the effects of the pills.

---

[1] Respondent is the Honorable Jeff Fletcher, judge of the 402nd District Court in Wood County, Texas. R.M. is the Real Party in Interest.

> I am afraid for the immediate safety and welfare of my daughter [K.M.] due to [A.S.'s] serious and illegal drug use and continued neglect of my daughter. I am asking the Court to enter an immediate temporary restraining order until a hearing can be held for the Court to enter appropriate orders to protect my daughter.

A.S. entered a general denial and filed a counter-petition. On May 2, Respondent signed a temporary restraining order that immediately restrained A.S. from having possession or access to K.M. unless under the direct supervision of R.M. or his designated agent.

On June 15, Respondent signed a temporary order appointing A.S. and R.M. as temporary joint managing conservators, but gave R.M. the exclusive right to designate K.M.'s residence within Wood County. Respondent found that "credible evidence has been presented to convince the Court that [A.S.] has a prescription drug problem[]" and ordered that her possession of K.M. at all times be under the direct line-of-sight supervision of Linda or Nelson Puckett. Respondent ordered the parties to attend mediation. On August 28, the parties signed a mediated settlement agreement that gave R.M. the right to designate K.M.'s residence and included a standard possession order with the exception of certain visitation during the summer. The record indicates that Respondent approved the settlement on August 31.

On September 8, R.M. filed a petition to modify on grounds that circumstances had materially and substantially changed since signing of the mediated settlement agreement. He sought appointment as K.M.'s sole managing conservator and denial of A.S.'s access to K.M. In his supporting affidavit, R.M. stated that a lab test of K.M.'s hair revealed exposure to marijuana. Respondent signed a temporary restraining order prohibiting A.S. from having any possession of or access to K.M. On September 12, Respondent extended the restraining order.

Thereafter, A.S. filed an answer and counter-petition. On September 27, she filed a supplement to her counter-petition and an affidavit, in which she stated that K.M. never acted drugged while in her possession or at her household, and that because R.M. scheduled and submitted K.M. for drug testing, "the most likely scenario is that [R.M.] drugged my child with marijuana in order to get the upper hand in our custody case." According to A.S., the Texas Department of Family and Protective Services (the Department)[2] tested A.S. and her entire household, including her two sons from a prior relationship, and all tested negative for marijuana. She also alleged that R.M. told her "on a number of occasions that he has had sex

---

[2] A.S.'s affidavit refers to the Department as "CPS."

with little girls and likes to have sex with little girls." Thus, she believed that he fed drugs to K.M. "in an effort to get her 100% for himself because of his sick sexual fetish." She stated that K.M. must be protected from R.M. Subsequently, R.M. filed a plea to the jurisdiction and motion to strike on grounds that A.S.'s pleadings were false and barred by res judicata.

On September 28, Respondent held a hearing on temporary orders. At the hearing, A.S.'s counsel informed Respondent that the Department conducted drug testing and discovered no evidence of marijuana use in A.S.'s home. R.M.'s counsel suggested that any further conduct between A.S. and K.M. be conducted in a therapeutic setting with a counselor. Respondent addressed A.S.'s allegations against R.M., noting that the allegations "don't get any worse[]" and had not been previously raised. Respondent stated that the allegations are contained in public documents, which K.M. may later review and "she's going to be able to come back and see the fact that you [A.S.] lied to the Court." Respondent suggested that A.S. reconsider her affidavit or have "really, really good proof that the allegations you're making are absolutely 100 percent true." Respondent stated the following regarding A.S.'s allegations against R.M.:

> If that kind of thing existed, why in the world didn't she [A.S.] (indicating) bring that up to me before the Final Order?
> And I'm not mad at you [counsel]. I'm mad at her [A.S.] (indicating).
> If this kind of stuff existed in any respect from anybody, certainly her father, why in the – why did we not visit this before the Order?
> …
> He's [R.M.] (indicating) acted like an idiot over this. And she [A.S.] (indicating) lies like nobody's business about lots of things.
> …And I'm telling you, I'm this (indicating) far from putting her [A.S.] in jail….any mother would have reported that in a heartbeat.

On October 12, Respondent signed an order giving A.S. supervised access to K.M. in a therapeutic setting at the offices of Pennye West, L.P.C. for K.M.'s safety and welfare. Respondent denied all further access or contact with K.M. by A.S. Responded signed an amended order on October 19.[3] This original proceeding followed.

---

[3] The October 19 amended order rendered the October 12 original order a nullity. *See **Bahar v. Lyon Fin. Servs., Inc.**, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied).

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both of these prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). "Mandamus will not issue when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family and Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding). "Because a trial court's temporary orders in a custody case are not appealable, mandamus is an appropriate means to challenge them." *In re McPeak*, 525 S.W.3d 310, 313 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding).

## ABUSE OF DISCRETION

A.S. challenges Respondent's temporary order on grounds that (1) R.M. offered no evidence to change custody or possession on a temporary basis; and (2) R.M.'s motion was based on conduct that predated the settlement agreement and, consequently, did not rely on grounds authorized by statute.

### Applicable Law

A trial court may modify an order that provides for the appointment of a conservator of a child, the terms and conditions of conservatorship, or the possession of or access to a child if (1) modification would be in the child's best interest; and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of (A) the date of the rendition of the order, or (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014). In a conservatorship modification action, the threshold inquiry for the trial court is whether the moving party met the burden imposed upon him of showing a material and substantial change in circumstances. *See Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). Whether there has been such a change is normally to be determined by an examination of the evidence of changed circumstances occurring between the date of the order or judgment sought to be modified and the date of the

filing of the motion to modify. *In re M.A.F.*, No. 12-08-00231-CV, 2010 WL 2178541, at *3 (Tex. App.—Tyler May 28, 2010, no pet.) (mem. op.). The moving party must show what material changes have occurred in the intervening period and the record must contain both historical and current evidence of the relevant circumstances. *Id*. Without both sets of data, the trial court has nothing to compare and cannot determine whether a change has occurred. *Id*.

A trial court's determination as to whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact specific. *Id*. Further, the policy behind the requirement of a material and substantial change is to prevent constant relitigation with respect to children and to attempt to create stability in the conservatorship. *Id*. If a circumstance was contemplated at the time of an original agreement, its eventuality is not a changed circumstance, but instead an anticipated circumstance that cannot be evidence of a material or substantial change of circumstances. *Id*. Courts have consistently required that a change be proved and that it be shown to be material and substantial. *Id*. A change in circumstances may be established by direct or circumstantial evidence and the party seeking modification has the burden of proving a change in circumstances by a preponderance of the evidence. *In re T.M.P.*, 417 S.W.3d 557, 564 (Tex. App.—El Paso 2013, no pet.); *In re A.B.P.*, 291 S.W.3d 91, 96 (Tex. App.—Dallas 2009, no pet.). "The requirement of this showing serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad." *In re M.N.G.*, 113 S.W.3d 27, 34 (Tex. App.—Fort Worth 2003, no pet.).

If the movant fails to meet his burden of proof, the trial court must deny the motion to modify. *Zeifman*, 212 S.W.3d at 589. In determining whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient information upon which to exercise its discretion, and (2) erred in its application of discretion, i.e., whether the record contains evidence of a substantial and probative character. *In re A.J.E.*, 372 S.W.3d 696, 698-99 (Tex. App.—Eastland 2012, no pet.); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied).

**Analysis**

In the affidavit supporting his motion to modify, R.M. stated that he became concerned when K.M. was lethargic and slept for long periods of time after returning from visitations with A.S. Suspecting that A.S. gave K.M. medication or a substance to make her sleep, R.M. took

K.M. to a lab for a 10-panel hair follicle drug screen on August 25, 2017 after a three-day visitation with A.S. The test results, dated September 7, detected the presence of marijuana, specifically, 7.0 pg/mg with a screen cutoff of 1 pg/mg. The report indicates that the lab tested for marijuana, amphetamine/MDA, methamphetamine/MDMA, opiates, cocaine, phencyclidine, benzodiazepines, barbiturates, methadone, and propoxyphene. According to the report, three inches of K.M.'s hair was tested, which represents an approximate six-month timeframe. The report also indicates that the wash step was "omitted from sample preparation procedure to reflect request for external exposure analysis." R.M.'s affidavit states, "I am afraid for the immediate safety and welfare of my daughter [K.M.] due to [A.S.'s] allowing my daughter to consume marijuana, and the clear neglect and abuse of my daughter." Accordingly, A.S.'s alleged exposure of K.M. to marijuana served as the basis for the motion to modify.

Nevertheless, at the temporary orders hearing, R.M.'s counsel argued that "regardless of the marijuana test, the greatest concern at this point is where we've got a sworn affidavit from [A.S.] making these kinds of allegations [against R.M.], and having unsupervised contact with this child, developing further allegations." In the current proceeding, R.M. argues that Respondent "could have found, and likely did, that the filing of such an affidavit is evidence of a material change in circumstances." He points to A.S.'s admission during the hearing that the alleged conduct by R.M. occurred before the settlement agreement. R.M. maintains that Respondent could reasonably conclude that A.S.'s "lack of truthfulness, her affidavit alleging egregious acts filed in direct response to the Petition to Modify when such acts were known prior to the previous order and never raised, yet knowing such acts, entering a settlement naming the alleged perpetrator the primary custodian of the child, as well as her willingness to make her affidavit a permanent public record" showed sufficient concerns for K.M.'s safety and welfare as to warrant restricting A.S.'s access to K.M. According to R.M., "there was sufficient evidence of [A.S.'s] dishonesty, misconduct, manipulation, questionable mental state, drug abuse, a belief that the 'rules don't apply to her,' and a willingness to make highly damaging and baseless allegations in retribution or to gain an advantage, through several hearings, for [Respondent] to find and conclude that for temporary orders' purposes the safety and welfare of the child necessitated ordering [A.S.] to have contact with the child only in the presence of a licensed therapist."

6

With respect to R.M.'s contention that A.S.'s allegations against R.M. support a conclusion that circumstances have substantially and materially changed, Respondent heard only the arguments of counsel and no testimony from either party or other witnesses on this issue, including the veracity of the allegations, at the temporary orders hearing. The statements and arguments of counsel do not qualify as evidence. *See In re L.L.O.*, No. 13-16-00644-CV, 2017 WL 3530935, at *4 (Tex. App.—Corpus Christi Aug. 17, 2017, no pet.) (mem. op.). Respondent noted on the record that A.S. has "limited credibility with this Court based on previous hearings and previous representations and misrepresentations." Nevertheless, as movant, R.M. bore the burden of providing sufficient evidence to support his allegations that circumstances had materially and substantially changed since entry of the mediated settlement agreement. *See In re T.M.P.*, 417 S.W.3d at 564; *see also In re A.B.P.*, 291 S.W.3d at 96.

Regarding the marijuana allegations, the lab testing represents a six month time period. While the lab results detected marijuana exposure, the results do not pin point when during the six months the exposure occurred, explain the significance of omitting the wash step and whether the level of marijuana detected is indicative of recent exposure, or identify the source of the exposure. Absent such evidence, Respondent had insufficient information on which to determine whether circumstances had materially and substantially changed such that A.S.'s access to K.M. should be limited to supervised visitation in a therapeutic setting. *See In re A.J.E.*, 372 S.W.3d at 698-99; *see also In re S.E.K.*, 294 S.W.3d at 930. Moreover, although R.M. did not receive the test results until after mediation, his affidavit demonstrates that he took K.M. for testing on August 25, three days before signing the settlement agreement on August 28. His affidavit further demonstrates that, at the time he entered the mediated settlement agreement, he had at least contemplated the possibility that K.M. may have been exposed to some medication or other substance, which prompted the drug testing. Thus, at the time of the settlement agreement, K.M.'s exposure to drugs was an anticipated circumstance that could not serve as evidence of a material or substantial change in circumstances. *See M.A.F.*, 2010 WL 2178541, at *3.

Accordingly, we conclude that R.M. failed to present sufficient evidence demonstrating a material and substantial change in circumstances by a preponderance of the evidence. *See In re T.M.P.*, 417 S.W.3d at 564; *see also In re A.B.P.*, 291 S.W.3d at 96; *Zeifman*, 212 S.W.3d at 589; TEX. FAM. CODE ANN. § 156.101(a). Because the record does not contain substantial and probative evidence supporting the conclusion that A.S.'s access to K.M. should be limited to

supervised access in a therapeutic setting, Respondent was required to deny the motion. *See Zeifman*, 212 S.W.3d at 589. Thus, Respondent's temporary order constitutes an abuse of discretion and A.S. satisfied her burden of demonstrating an entitlement to mandamus relief. *See In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d at 382; *see also In re Fitzgerald*, 429 S.W.3d at 891.

## CONCLUSION

Based upon our review of the record and the foregoing analysis, we conclude Respondent abused his discretion by signing the temporary order restricting A.S.'s possession of K.M. to only supervised access in a therapeutic setting. Accordingly, we ***conditionally grant*** A.S.'s petition for writ of mandamus. We direct Respondent to vacate the temporary order of October 19, 2017. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if Respondent fails to do so ***within fifteen days of the date of the opinion and order***. Respondent shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

GREG NEELEY
Justice


Opinion delivered February 21, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(PUBLISH)


8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# <u>ORDER</u>

**FEBRUARY 21, 2018**

**NO. 12-18-00012-CV**

**A.S.,**
Relator
V.
**HON. JEFF FLETCHER,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by A.S.; who is the relator in Cause No. 2017-269, pending on the docket of the 402nd Judicial District Court of Wood County, Texas. Said petition for writ of mandamus having been filed herein on January 23, 2018, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his amended temporary order of October 19, 2017 limiting A.S.'s access to K.M. to supervised vitiation in a therapeutic setting and denying all other access or contact by A.S. with K.M.; the writ will not issue unless the **HONORABLE JEFF FLETCHER** fails to comply with this Court order ***within fifteen (15) days*** from the date of this order.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*