**IN RE Shaley ABNEY, Relator**

**No. 07–15–00456–CV**

Court of Appeals of Texas, Amarillo.

February 17, 2016

William E. McNamara, III, Terri M. Morgeson, for Relator.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

Brian Quinn, Chief Justice

S.A., mother of Z.L.A. (the child), petitioned for writ of mandamus against the Hon. Carter Schieldneckt, 106th Judicial District (trial court). Through it, she requested that we order the trial court to vacate temporary orders purporting to 1) interfere with her right to designate the child's primary residence without any geographic restriction, 2) alter her possession and access to the child, and 3) relieve the child's father, E.C., of his obligation to pay child support and provide cash medical support for the child. We deny the petition.

*Background*

According to the record, S.A. and E.C. were never married, though both are the child's biological parents and resided in Garza County at the time of the birth. Upon their offspring's birth, an order issued designating both parties as joint managing conservators of the child, granting S.A. the right to designate the child's primary residence free of geographic restriction, and obligating E.C. to provide the

aforementioned support. Per the order, E.C. was also granted possession of the child every first, third, and fifth weekends of the month because he did not reside more than 100 miles from the child's primary residence.

In November of 2014, S.A. moved to Fort Myers, Florida, and took the child without providing written notice of intent to do that. The provision of such notice was required by a previously executed temporary order. Approximately one month later, E.C. petitioned the trial court to modify the prior order allowing S.A. to designate that child's primary residence. He sought, among other things, the right to designate the child's primary residence or to have the child's residence restricted to Garza County and contiguous counties.

The trial court convened a hearing on E.C.'s motion in June of 2015, granted it in part, and orally pronounced its decision in open court. Before doing so, it chided S.A. for her decision to take the child to Florida. That is, it told her "[i]t is not appropriate for a child to be taken out of state and basically make it so that the other parent is—is not able to see the child for—let's see what has this been now eight months or so."[1] Nonetheless, both parents were retained as joint managing conservators, and S.A.'s status as the parent with authority to set the child's primary residence without geographic limitation went unchanged. However, it ordered that the child's primary residence be in Garza County "until further orders" and

directed S.A. to deliver the child to E.C. for visitation through August 25, 2015. The reason for the latter related to S.A.'s removal of the child to Florida in November of 2014; as stated by the trial court: "since [the child] has been basically kept from [E.C.] for—since November, his summer visitation will be extended until that time, although that is longer than what would—it would have been." It also relieved E.C. of paying child support while in the possession of his daughter.

So too did the trial court withhold a final adjudication on the motion to modify. Instead, it opted to monitor the situation via subsequent hearings. The first "status hearing" was scheduled for August 25, 2015. A written order memorializing its decision was signed on July 8, 2015.

A status conference was held on August 25th, as scheduled. At the end of the proceeding, the trial court retained the status quo as established at the June hearing. However, S.A. (who was still living and working in Florida) was granted visitation for a weekend each month. Another hearing was scheduled for November of 2015.

Despite the November setting, the trial court actually convened a hearing on October 20th to address S.A.'s motion to modify temporary orders.[2] It received evidence illustrating that S.A. had returned to Texas and resided in the Abilene area. Other evidence touched upon her desire to regain possession of the child and E.C.'s supposed faults in caring for the youth.

---

1. Evidence admitted at the proceeding included comments purportedly transmitted by S.A. to E.C. via Facebook. Though she denied sending them they consisted of her saying: "Man, look, as far as I'm concerned, she ain't yours. [You] ... don't do anything for her, so keep your 60 every week for child support ... so keep to yourself and your life and leave me alone and my daughter alone ..."

2. The substance of the motion consisted of the following:

   The present orders relating to possession of and access to the child have become unworkable and are no longer in the best interest of the child. [S.A.] requests that the current temporary orders be vacated. [S.A.] prays that the Court grant the Motion to Modify Temporary Orders.

The trial court opted to deny S.A.'s motion to modify once the parties had finished presenting their respective positions. Nevertheless, it granted S.A. greater visitation rights and designated E.C. as the parent with authority to establish the child's primary residence. Other orders issued such as obligating E.C. to 1) obtain "Chips or Medicaid" for the child, 2) take the child to see a doctor, and 3) bar the three year old child from continually playing with electronic devices such as iPads and iPhones.

*Analysis*

As recently stated by this court, a writ of mandamus is an extraordinary remedy issuing at the discretion of the court. *In re Epps*, No. 07–14–00420–CV, 2014 WL 7448497, at *1–2, 2014 Tex.App. LEXIS 13951, at *4 (Tex.App.—Amarillo December 31, 2014, orig. proceeding), *accord, Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366 (Tex.1993) (orig.proceeding). Though not an equitable remedy, its issuance nevertheless is largely controlled by equitable principles. *In re Epps*, 2014 WL 7448497, at *1–2, 2014 Tex.App. LEXIS 13951, at *4. One such principle mandates the use of diligence; that is, equity aids the diligent, not those who sleep on their rights. *Id.* For this reason, unjustified delay in seeking it (and a writ of mandamus) may result in its loss. *Id.*

An appropriate corollary to the rule mandating diligence is that requiring the petitioner to first seek relief from the trial court. That is, our Supreme Court has long stated that mandamus generally is unavailable to compel an action which had not first been demanded of and refused by the trial court. *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex.1991). Indeed, the avoidance of delay and the wasteful expenditure of time would be fostered if complaints were first brought to the attention of the trial court and that court were given opportunity to address them. This may well avoid the unnecessary intervention by an appellate court via a petition for writ of mandamus. And, this concept of permitting a trial court to first consider the matter may well be the reason why another rule of mandamus practice holds that arguments withheld from the trial court will not first be considered in a petition for writ of mandamus. *In re American Optical Corp.*, 988 S.W.2d 711, 714 (Tex.1991) (orig.proceeding) (refusing to consider the specific objection because it was not presented to the trial court); *In re Bacak*, No. 13–13–00553–CV, 2013 Tex. App. LEXIS 13271, at *3 (Tex.App.—Corpus Christi October 18, 2013, orig. proceeding).

Finally, we note another long established principle. It imposes upon the person seeking a writ of mandamus the burden to show himself entitled to it. *In re Davidson*, 153 S.W.3d 490, 491 (Tex. App.—Amarillo 2004, orig. proceeding). With the foregoing principles in mind, we turn to the arguments before us.

First, those complaints regarding the trial court's purported refusal to 1) grant S.A. possession of and access to the child and 2) impose upon E.C. an obligation to pay child support and provide cash medical support for the child were mentioned but not briefed. Briefing the issues presented for consideration and explaining why the trial court abused its discretion in not granting the particular relief sought is part and parcel of the duty to establish one's entitlement to a writ of mandamus. We do not issue a writ simply because the petitioner requested it. So, in failing to brief the two itemized issues above, S.A. did not carry her burden to show that her complaints entitled her to relief.

Second, the argument involving interference with S.A.'s right to designate the

child's primary residence without geographic restriction implicates § 156.006(b) of the Texas Family Code, according to S.A. That statutory provision addresses the authority of a trial court to issue a temporary order changing the identity of the person previously designated as having the exclusive right to establish the primary residence of a child.[3] Here, the purported interference came when the trial court ordered the child to be delivered to E.C. and remain in Garza County until further order. That happened at the June 2015 hearing. Since then several other hearings were held and, most importantly, no one complained of the previous directive. Nor did anyone suggest to the trial court that it somehow breached § 156.006(b) of the Family Code in pronouncing any of its decisions. Indeed, that objection was first uttered here. Waiting almost six months to voice complaint and withholding the particular grounds underlying it satisfies neither the requirement of diligence discussed in *Epps* (wherein delays of four and ten months were noted as being too long) or the mandate of *American* and *Bacak* that the trial court be the first to consider the objection.

Accordingly, we deny the petition for writ of mandamus.

---

3. The statute specifies that:

> While a suit for modification is pending, the court may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child under the final order unless the temporary order is in the best interest of the child and:
>
> (1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development;
>
> (2) the person designated in the final order has voluntarily relinquished the primary care and possession of the child for more than six months; or
>
> (3) the child is 12 years of age or older and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child

TEX. FAM. CODE ANN. § 156.006(b)(1)–(3) (West 2014).