

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00249-CV

---

IN RE WILEY MCINTIRE, PAUL MCINTIRE, KATHY TOPPER, JAN WOODS (F/K/A
JAN LUSTER), JACKIE LEANNE CLEMENTZ (F/K/A JACKIE LEANNE WADE),
AND GARY BURDETTE WADE, RELATORS

---

ORIGINAL PROCEEDING

---

January 5, 2023

# MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and MESSER,[1] JJ.

Wiley McIntire, Paul McIntire, Kathy Topper, Jan Woods (f/k/a Jan Luster), Jackie Leanne Clementz (f/k/a Jackie Leanne Wade), and Gary Burdette Wade (the McIntires) challenge two rulings through their petition for writ of mandamus. The rulings were issued by the Honorable Steven R. Emmert, 31st Judicial District Court (trial court). They ask us to direct the trial court to vacate its 1) August 9, 2022 Order "Denying Beneficiaries' Emergency Motion to Compel Deposit of Remaining Trust Assets into Court's Registry"

---

[1] Honorable Stuart Messer, 100th Judicial District Court, sitting by assignment.

and 2) January 27, 2022 Order on "Motions for Partial Summary Judgment." We deny the petition.

### Standard of Review

The burden lies with the one petitioning to prove his entitlement to a writ of mandamus. *In re Scott Xxxx*, No. 07-22-00160-CV, 2022 Tex. App. LEXIS 3823, at *2 (Tex. App.—Amarillo June 7, 2022, orig. proceeding) (mem. op.). Furthermore, such relief is available only to correct a clear abuse of discretion when there is no adequate remedy at law by appeal. *In re Garza*, No. 07-22-00262-CV, 2022 Tex. App. LEXIS 8059, at *2 (Tex. App.—Amarillo Oct. 31, 2022, orig. proceeding) (mem. op.). That said, we turn to the proceeding at hand and begin with the partial summary judgment.

### Partial Summary Judgment

Generally, a writ of mandamus is unavailable as a means to review a partial summary judgment. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) (orig. proceeding); *In re Alvarez*, No. 01-19-00499-CV, 2019 Tex. App. LEXIS 6482, at *2 (Tex. App.—Houston [1st Dist.] July 30, 2019, orig. proceeding) (mem. op.); *In re Brown*, No. 05-19-00877-CV, 2019 Tex. App. LEXIS 642, at *2–3 (Tex. App.—Dallas July 25, 2019, orig. proceeding) (mem. op.); *In re Robison*, 335 S.W.3d 776, 783 (Tex. App.—Amarillo 2011, orig. proceeding). Yet, generally does not mean always. *In re Robison*, 335 S.W.3d at 783; *accord In re United Servs. Auto. Ass'n*, 307 S.W.3d at 314 (directing the trial court to grant a summary judgment wherein which the movant alleged the want of subject-matter jurisdiction). As the Supreme Court revealed, utilizing mandamus to review a decision rendered upon a summary judgment motion may be appropriate when it ends the litigation. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d at 314 (quoting *In*

*re McAllen Med. Ctr.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding), and stating the rule against reviewing summary judgment through a mandamus "is based in part on the fact that 'trying a case in which summary judgment would have been appropriate does not mean the case will have to be tried twice'—a justification not applicable here"); *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 465–66 (stating that "insisting on a wasted trial simply so that it can be reversed and tried all over again creates the appearance . . . that [courts] don't know what they are doing" and "[s]itting on our hands while unnecessary costs mount up contributes to public complaints that the civil justice system is expensive and outmoded"). We too have recognized this when observing that "[i]n those cases where the benefits of mandamus relief outweigh the detriments, an appellate court should not allow the hyper-technical application of procedural devices and constructs to thwart the rule of law and the ends of justice." *In re Robison*, 335 S.W.3d at 783 (where refusing to review the summary judgment ruling allowed "an almost four-year-old personal injury cause of action" to be "put on hold while the parties litigate an unenforceable settlement agreement" and "all parties, including both the trial court and this Court, will be forced to endure the delay, cost, and expense of both the litigation and inevitable appeal of nothing more than an unenforceable oral settlement of the abated personal injury cause of action"). Those are not the circumstances here, however.

The summary judgment at bar was and is partial. It dealt with the limitations period applicable to some claims, namely compliance with the duty to annually account. Many other purported instances of misfeasance urged by the McIntires would still require adjudication. So, assuming *arguendo* the summary judgment was wrong, effectively reversing it (or directing the trial court to do so) would not end the litigation.

3

Moreover, if review of the partial judgment were pivotal to the efficacious disposition of the suit, question arises as to why the McIntires waited slightly over seven months to seek it through mandamus. While a writ of mandamus may not be an equitable remedy, equitable principles influence its issuance. *In re Abney*, 486 S.W.3d 135, 138 (Tex. App.—Amarillo 2016, orig. proceeding). One such principle requires the petitioner to act diligently. *Id.* Unjustified delays in seeking mandamus relief may result in its loss. *Id.* The McIntires do not offer a justification for waiting the seven months to petition us for intervention. As we noted in *Abney*, unjustified delays of four and six months have warranted denial of relief. *Id*. at 139. The seven-month unexplained delay falls within the same category. And, we find it difficult to say no one suffered harm from it. Apparently, the cause was set for trial in October 2022. Petitioning for a writ of mandamus interfered with that setting. Had trial then occurred, the vindication of all rights and interests involved may well have occurred. Now, all must suffer the passage of more time  before final adjudication of this over two-year-old suit.

In sum, we deny that portion of the petition for writ of mandamus wherein the McIntires seek review of the partial summary judgment.

### *Order Regarding Disgorgement of Fees and Sequestration of Trust Assets*

The remaining aspect of the trial court's order under attack involves its refusal to enter an interlocutory order. The McIntires sued Gary Jahnel, individually and as trustee of the Horace Lee (Jack) Daughtry Family Trust, alleging about twenty instances of purported misfeasance as trustee. As part of that litigation, the McIntires moved for an order seeking two forms of interim relief. First, they asked the trial court to direct Jahnel to disgorge or reimburse the trust for attorney's fees paid from trust assets to the attorneys

4

defending him against their claims. Second, they sought an order directing him to deposit the trust corpus into the registry of the trial court pending trial. The trial court refused to do either. That decision supposedly constituted a clear abuse of discretion for which they lacked an adequate legal remedy, thereby warranting our intervention through a writ of mandamus. We disagree.

First, and as previously said, mandamus issues upon the petitioner establishing two elements. One is the presence of clearly abused discretion on the part of the trial court. The second is the absence of an adequate legal remedy by appeal. Regarding the latter, the McIntires urge that appeal is an inadequate legal remedy because "[i]f Jahnel is unable to respond to a judgment for damages, an appeal will provide Beneficiaries with no adequate remedy."[2] This argument implicitly injects aspects of a different type of relief into the mix. The relief of which we speak is a temporary injunction. And, one of the conditions to securing it entails proving that the movant faces the risk of irreparable injury. *See Abbott v. Anti-Defamation League,* 610 S.W.3d 911, 916 (Tex. 2020) (per curiam) (quoting *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002), and noting that the elements for securing a temporary injunction include a probable, imminent, and irreparable injury in the interim); *see also Butnaru*, 84 S.W.3d at 204 (stating that injury is irreparable when the injured party cannot be adequately compensated in damages or the damages cannot be measured). Simply put, the McIntires urge that appeal is an inadequate remedy because they risk irreparable injury. The latter comes in the form of Jahnel purportedly having insufficient assets to reimburse

---

[2] Indeed, many of the reasons for saying they lack an adequate legal remedy have foundation in Jahnel's purported inability to pay damages or reimburse the trust for monies expended to pay legal fees.

the trust for attorney's fees it paid in defending him. Having insufficient assets means the monies expended from the trust will be beyond reparation by him.

Assuming the temporary injunction lens to be an appropriate means of analyzing a mandamus question, the McIntires' argument would seem influential only if Jahnel could not respond to an award of damages. Logically, if he could so respond, then there would be no need to act in the interim. In other words, assets would be available to pay what they fear would be lost. Yet, the McIntires directed us to no evidence indicating Jahnel lacked the ability to reimburse the attorney's fees paid or to be paid as the trial progressed. Nor did we find any.[3] Indeed, at the hearing below, they represented to the trial court that they do not know if he could or could not so respond. That means the financial risk they claim to face is mere speculation, and, speculation does not prove impending injury. *Town of Flower Mound v. EagleRidge Operating, LLC*, No. 02-18-00392-CV, 2019 Tex. App. LEXIS 7561, at *15 (Tex. App.—Fort Worth Aug. 22, 2019, no pet.) (mem. op.) (stating that because the record "is devoid of evidence demonstrating loss of goodwill or other intangible losses potentially associated with a disruption of business," the argument about irreparable injury "is nothing but speculation").

Concerning the element of clearly abused discretion, we must remember what that means. Our Supreme Court described it as a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding) (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding)). And, for the decision to fall within that

---

[3] Nor did they argue that the legal remedy of appeal would remain insufficient even if Jahnel could respond to an award of damages.

realm, the petitioning party must show that the trial court had but one way to rule under the circumstances present. *Id.*

Here, the particular decision under attack has several facets. The most obvious is that concerning the effect of a trustee's breach of fiduciary duty upon the right to reimbursement of litigation expenses from trust assets. A second involves the interlocutory nature of the suit in question. A third reflects the numerous instances of purported breach alleged by the trust beneficiaries. Another implicates the absence of any formal adjudication or finding of misfeasance regarding any of the multiple allegations of misconduct. A fifth concerns the obligations of a trial court to sequester trust assets, to direct the return of attorney's fees already paid from the trust, and to refuse further payment as the parties prepare for a formal and final adjudication of claims. It is against the backdrop of these many facets that we decide whether the McIntires carried their burden of proving a clear abuse of discretion, i.e., that the trial court had no choice but to order disgorgement and sequestration.

Their effort to carry that burden consisted of citing authority recognizing a trial court's ability to act. *See, e.g.*, TEX. PROP. CODE ANN. § 114.008(a); 760 ILCS 3/1001; *Castilleja v. Camero*, 414 S.W.2d 431 (Tex. 1967). Yet, the two statutes they mentioned speak of what the trial court "may" do to "remedy a breach of trust." TEX. PROP. CODE ANN. § 114.008(a); 760 ILCS 3/1001(b). Neither specify what a court **must** do. Nor do they mandate a court to sequester the trust estate, order the reimbursement of previously paid fees, and effectively place the trustee in the position of funding his own defense against claims which may ultimately prove baseless. In short, the implementation of any remedies mentioned in the two statutes is discretionary, and none required the court to

grant the relief sought by the McIntires. *See Duncan v. O'Shea*, No. 07-11-0088-CV, 2012 Tex. App. LEXIS 6494, at *18 n.12 (Tex. App.—Amarillo Aug. 7, 2012, pet. denied) (mem. op.) (observing that the word "may" is discretionary).

The same is true of *Castilleja*. The Supreme Court did say that a trial court "can order payment of the disputed funds into its registry until its ownership is determined." *Castilleja*, 414 S.W.2d at 433. It did not say that the trial court must do so. Moreover, in *Castilleja*, liability had been adjudicated, unlike here. Through a final judgment, the trial court had awarded Camero $17,000. The dispute apparently then became twofold. One aspect involved ownership of $17,000 found in a Mexico bank. The other concerned the availability of that sum to satisfy the claim of the judgment creditor. *Castilleja* had nothing to do with a trust, breach of fiduciary duties, or barring the trustee from utilizing trust assets to pay litigation expenses incurred in defending against allegations of misfeasance (as the trustee) which may or may not be legitimate. These circumstances make the opinion rather inapposite to the case at hand.

Other authority cited as purportedly mandating the relief sought were *T & R Assocs., Inc. v. Amarillo*, 601 S.W.2d 178, 180 (Tex. Civ. App.—Amarillo 1980, no writ), and *Rattikin Title Co. v. Grievance Comm. of State Bar*, 272 S.W.2d 948, 955 (Tex. Civ. App.—Fort Worth 1954, no writ). But, like *Castilleja*, neither involved a trust, unadjudicated allegations of breached fiduciary duty by a trustee, or effort to disgorge and sequester trust property pending final disposition of the allegations. Rather, *Rattikin* concerned a temporary injunction to bar a title company "from preparing legal instruments as a part of any transaction to which it was not itself a party or the agent of a party." *Rattikin Title Co.*, 272 S.W.2d at 949. In turn, the *T & R* court was asked to review a

temporary injunction "restraining T & R Associates, Inc., from operating a lounge in violation of zoning and building code ordinances." *T & R Assocs., Inc.*, 601 S.W.2d at 179. Admittedly, *T & R* utters the proposition about a trial court having the duty to restrain a violation of the law. *Id.* at 180. But, it certainly does not say through that general proposition that there was only one way to restrain the violation. We did not say in *T & R* that the trial court must sequester trust assets and order the disgorgement of previously paid fees while awaiting the ultimate adjudication of claims about misfeasance.

And, returning to the *pendente lite* nature of the case and McIntires' request, we cannot ignore the trial court's concern for it. Petitioner's counsel devoted a good part of his argument discussing the general rule about a trustee losing trust assets as a source of payment for litigation expenses in certain situations. As he did, the trial court asked: "But doesn't that hinge on the fact that there hasn't been determination made that he has breached it . . . [?]" Counsel attempted to assuage the trial court of its concern. He did so by referring it to purportedly new and undisputed evidence proving that Jahnel at least thrice breached his fiduciary duties. Setting aside opposing counsel's disagreement with the representation, two facts remained true. First, petitioner's counsel did not direct the trial court to authority implementing the alleged general rule *pendente lite*. Second, there had and has been no formal adjudication that any breach occurred. So, given the rule that "a trustee may charge the trust for attorney's fees the trustee, acting reasonably and in good faith, incurs defending charges of breach of trust," *Moody Found. v. Estate of Moody*, No. 03-99-00034-CV, 1999 Tex. App. LEXIS 8597, at *15–16 (Tex. App.—Austin Nov. 18, 1999, pet. denied) (mem. op.), a finding of breach would seem a prerequisite to barring a trustee from turning to the trust for payment.

9

In short, the legal authority offered does not establish that the trial court had but one choice, which was to grant the specific relief sought by the McIntires.   This is not to say the court is unable to fashion other relief which protects all involved as this aging suit winds its way to final disposition.[4]  It is to say that the McIntires failed to prove their entitlement to a writ of mandamus when the trial court denied their motion below.

We deny the request for a writ of mandamus.   Our September 9, 2022 order granting 'preliminary temporary relief in this original proceeding' is vacated.


Brian Quinn
Chief Justice

---

[4] It appears that a final hearing was set for October 2022.  Before then, though, the McIntires filed the current petition for mandamus relief.  Whether it or some other reason prevented the trial from occurring is unclear.