# NO. 12-23-00047-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *VOLT POWER, LLC,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Volt Power, LLC filed this original proceeding in which it challenges Respondent's order granting a motion to compel production filed by Real Party in Interest, Quandel Ray Morgan.[1] We conditionally grant the writ in part.

## BACKGROUND

This case arises out of a vehicular collision wherein Real Party in Interest Jared Shane Henderson, while driving a Volt commercial truck, struck Morgan's vehicle, in which Real Party in Interest Betty Holcomb was a passenger. In 2019, Morgan and Holcomb (collectively RPIs) sued Henderson for negligence and negligence per se and sued Volt for negligent entrustment, negligence, negligent hiring, training, supervision, and retention, and respondeat superior. They alleged gross negligence by both Henderson and Volt. Volt does not dispute that Henderson was acting in the course and scope of his employment at the time of the collision.

According to RPIs, Morgan proceeded into the intersection when his light turned green, but Henderson failed to stop at the red light and struck Morgan's vehicle. RPIs state that Henderson claimed that the truck's brakes failed and that Crane Tech Inc. conducted a faulty

---

[1] Respondent is the Honorable Dean Fowler, Judge of the 115th District Court in Upshur County, Texas.

inspection of the truck's brake system.[2] Henderson further expressed anger towards Volt personnel responsible for the truck's inspection and maintenance.

RPIs alleged that they sustained serious and substantial injuries as a result of the collision. They allege that Henderson failed to (1) keep a proper lookout while operating the truck, and (2) observe in an intelligent manner factors such as "the general situation present on the roadway," the red light, the rate of speed at which he was driving the truck, the proximity of the truck and Morgan's vehicle, and that Morgan was lawfully entering the intersection. RPIs allege that had Henderson maintained a proper lookout, he would have noticed the red light and stopped the truck; rather, he took no precautionary measures. RPIs maintain that Henderson failed to operate the truck at a safe speed and in a reasonable and prudent manner. Otherwise, Henderson would have been able to stop the truck in sufficient time. Additionally, RPIs allege that Henderson failed to yield the right-of-way and stop at the red light in violation of the transportation code. They pleaded that Henderson had an actual, subjective awareness that driving a large truck on a busy highway while not watching the road, controlling his speed, and/or running a red light created an extreme degree of risk of severe injury, but he proceeded with conscious indifference to the rights, safety, and welfare of others.

RPIs allege that Volt (1) entrusted its truck to an unqualified, incompetent, unfit, and dangerous driver, (2) negligently inspected and maintained the truck, i.e., the brakes were not properly functioning, and (3) negligently hired, trained, retained, and supervised Henderson, as well as those responsible for maintaining and inspecting the truck, including Henderson's supervisor and supervisory personnel. RPIs pleaded that Volt had a subjective awareness that "allowing an unqualified, incompetent and dangerous driver, who had been inadequately trained and supervised in the safe operation of a large, powerful, and dangerous truck, to operate such a truck on the public streets and highways of the State of Texas, posed an extreme degree of risk to members of the public." They further pleaded that Volt had a subjective awareness that "allowing one of its large, powerful, and dangerous trucks - with unmaintained, improperly functioning, and unsafe brakes, combined with a defective braking system - to be operated on the public streets and highways of the State of Texas, posed an extreme degree of risk to members of

---

[2] The RPIs also sued Crane Tech, Inc., a heavy equipment inspection company. Crane Tech is not a party to this proceeding.

2

the public." According to RPIs, Volt proceeded with conscious indifference to the rights, safety, and welfare of others.

On March 13, 2020, Morgan served Volt with a first request for production (set one) that included 110 items. On March 17, Morgan served Volt with a second request for production (set two) that included seventy-five items. Some requests from both sets included subsections. Volt objected to numerous requests in both sets. According to Volt, it produced over 557 pages of documents. On May 17, 2022, Morgan's counsel sent letters to Volt's counsel, in which he complained of Volt's objections and responses to a total of sixty of the requests, including some subsections, from both sets of production. In response to Morgan's request for a privilege log, Volt responded:

> The only documentation or information being withheld is information and conversations passed between counsel and Defendant pursuant to the defense of this case, which is being withheld as privileged by the attorney/client privilege and work product privilege, pursuant to rule 193.3(c). As a result, there is no requirement incumbent upon Defendant to specifically identify said documents or information being withheld.

Morgan filed a motion to compel, and subsequently filed a supplemental motion. His motion to compel sought an order instructing Volt to fully respond to the sixty requests identified in his two letters, as well as three additional production requests.

On November 8, Respondent held a hearing on the motions. At the conclusion of the hearing, Respondent overruled Volt's objections and stated the following:

> Now, I do not expect you to produce direct communications. And if you've already produced something then that's the answer: "This has already been produced." But, please tell Volt -- because I don't ever remember a lawsuit with them, that there's no sanctions today, but if I have to do this again then we'll take them one by one and then there will be sanctions because that's just how I do it.

Respondent signed an order on January 3, 2023, in which he granted Morgan's motions to compel and ordered Volt to produce documents responsive to the sixty-three requests Morgan identified in his two letters and motion to compel, including (1) Requests 9, 10, 16, 18, 19, 23, 30, 31, 34, 37, 38, 39, 44, 59, 60, 61, 62, 65, 66, 66a, 68, 70, 71, 81, 83, 85, 85a, 89, 91, 95, 95a, 98, 108, 109, and 110 from set one; and (2) Requests 4, 8, 12, 15, 16, 18, 21, 23, 27, 29, 31, 34,

3

34a, 35, 37, 40, 41, 43, 44, 48, 51, 53a, 53d, 54, 64, 64a, 66, and 69 from set two.[3]  The order states, "Volt's assertion of the attorney-client privilege and/or the work product privilege are not overruled – at this juncture – with respect to direct communications between client and its attorney(s)."  The order clarified that Volt was not required to produce any such direct communications responsive to the order for which Volt asserted the attorney-client or work product privileges.  Respondent also ordered Volt to produce a privilege log.[4]

Volt filed this original proceeding on February 9.  This Court granted Volt's request for a stay of Respondent's January 3 order pending further order of this Court.

## PREREQUISITES TO MANDAMUS

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is not adequate remedy by appeal.  *See In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding) (per curiam).  A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.  *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  A trial court has no discretion in determining what the law is or in applying the law to the facts.  *Id*. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus.  *Id*.  The relator has the burden to establish the prerequisites to mandamus.  *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding).  A party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it a part of the record.  *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843.

---

[3] Before the hearing, the parties reached an agreement as to Requests 108 and 109 from set one. Respondent still included these two requests in his order.  Volt raises no issues regarding these two requests.

[4] Volt does not present any complaints related to Respondent's order requiring a privilege log or other matters related to privilege.

Volt argues that Respondent abused his discretion by overruling its objections and ordering Volt to produce documents responsive to requests that are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and/or seek irrelevant documents.

<u>**Applicable Law**</u>

It is not the burden of the responding party to tailor a reasonable discovery request for the requesting party. *In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 181 (Tex. App.— Houston [14th Dist.] 2010, orig. proceeding). Rather, the requesting party has the responsibility to narrowly tailor its requests. *Id*. at 182. Specifically, a discovery request must show a reasonable expectation of obtaining information that will aid the dispute's resolution and must be reasonably tailored to include only matters relevant to the case. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, provided the discovery is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. Although "relevant to the subject matter" is broadly construed, there are limits. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (per curiam) (orig. proceeding) (citing *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam)). The evidence need not be admissible; it is sufficient that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a). "Information is 'patently irrelevant' when reasonable minds would not differ that it has no tendency to prove or disprove any issue involved in the subject matter of the suit and the information's irrelevancy is apparent from the face of the record." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.— Houston [14th Dist.] 2018, orig. proceeding). We evaluate relevancy on a case-by-case basis by considering, among other things, the claims as pleaded and the instrumentality of the alleged injury. *Id*.

A discovery request is overbroad when it encompasses time periods, activities, or subject matters that are not relevant to the case in which the discovery is sought. *See Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 226. Such requests are overly broad as a matter of law. *In re United Fire Lloyds*, 578 S.W.3d 572, 580 (Tex. App.—Tyler 2019, orig. proceeding); *In re Brookshire Grocery Co.*, No. 12-06-00065-CV, 2006 WL 2036569, at *2 (Tex. App.—Tyler July 21, 2006, orig. proceeding) (mem. op.). A party may not use discovery as a fishing expedition. *UPS Ground Freight*, 646 S.W.3d at 832. "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *CSX Corp.*, 124 S.W.3d at 153; *see UPS Ground Freight*, 646 S.W.3d at 832.

The scope of discovery largely rests within the discretion of the trial court. *See CSX Corp.*, 124 S.W.3d at 152. But because parties are not entitled to unlimited discovery, the trial court must impose reasonable discovery limits. *In re Hyundai Motor Co.*, No. 12-19-00417-CV, 2020 WL 1445303, at *6 (Tex. App.—Tyler Mar. 25, 2020, orig. proceeding) (mem. op.). A discovery order that compels overly broad discovery is an abuse of discretion. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam).

**Requests Before this Court**

As previously stated, Respondent ordered Volt to fully respond to a total of sixty-three requests, including some subsections from the two sets of production. Our review of Volt's mandamus petition reflects that Volt presents specific arguments regarding: Requests 39, 65, 70, 71, 83, 85, 85a, 91, 95, and 95a from set one and Requests 31, 34, 34a, 40, 41, 43, 44, 48, 51, 53, 53a, 53d, and 54 from set two. Referring to all sixty-three ordered production requests, Volt asserts that "[n]one of these requests were narrowed by the trial court during the November 8, 2022, hearing, nor were they addressed one by one." Volt makes other global assertions, such as (1) Respondent abused his discretion by ordering Volt to produce documents responsive to requests that do not seek documents relevant to the underlying case, (2) Morgan's live petition contains no allegations that would render Respondent's order proper and the purposes of Morgan's requests are unrelated to Volt's alleged behavior, or that of Henderson, particularly given that course and scope is undisputed, (3) many requests are not limited by time or scope, (4) not one of the "discovery requests to Volt were tailored" by Respondent, and (5) Morgan's

6

"presumable goal in issuing the breathtakingly over broad requests discussed herein is to prove a 'corporate strategy to ignore safety laws' relating to Plaintiff's gross negligence claims."

To the extent Volt globally challenges all sixty-three ordered production requests, it is not this Court's duty, or even right, to conduct an independent review of the record and applicable law to determine whether there was error. *Interest of A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied). Were we to do so, we would be abandoning our role as neutral adjudicators and become an advocate for that party. *Id*. A mandamus petition must contain clear and concise arguments for the contentions made, with appropriate citations to authorities and the appendix or record. *See* TEX. R. APP. P. 52.3(h). Fulfilling this duty entails more than proffering mere conclusions; a relator must provide substantive legal analysis supporting the arguments and conclusions. *Fitzgerald*, 429 S.W.3d at 897. Except for the requests we identified above to which specific arguments were made, Volt offers no substantive discussion of legal principles or controlling authority regarding the other production requests to which it was ordered to respond. *See id*. We will not speculate as to the merits of Volt's attack on the ordeed production requests it only globally challenged in its petition. *See Stanton v. Gloerson*, No. 05-16-00214-CV, 2016 WL 7166550, at *5 (Tex. App.—Dallas, Nov. 30, 2016, pet. denied) (mem. op.). Volt's failure to fulfill its duty under Rule 52.3(h) results in waiver of its complaint regarding all the requests it has not specifically challenged. *See In re Aethon Energy Operating, LLC*, No. 12-21-00202-CV, 2022 WL 242902, at *5 (Tex. App.—Tyler Jan. 26, 2022, orig. proceeding) (mem. op.) (declining to address challenge to production requests where argument regarding majority of requests consisted of mere conclusions without substantive discussion of legal principles or controlling authority, and limiting review of interrogatories to those specifically discussed by relators); *see also Fitzgerald*, 429 S.W.3d at 897; *In re Lankford*, 501 S.W.3d 681, 690 (Tex. App.—Tyler 2016, orig. proceeding) (declining to address issue unsupported by substantive analysis); *Stanton*, 2016 WL 7166550, at *5.

But with respect to the specifically challenged requests, on March 21, the RPIs filed a stipulation and agreement to permanently withdraw Requests 85a, 95, and 95a from set one and Requests 31, 34, 34a, 41, 43, 44, 48, and 51 from set two. The stipulation unequivocally asserts that RPIs will not file these requests or any similar discovery requests in the future.

7

Accordingly, any argument with respect to these requests is now moot.[5] *See **In re Smith County***, 521 S.W.3d 447, 453 (Tex. App.—Tyler 2017, orig. proceeding) (case becomes moot when controversy no longer exists, i.e., issues presented are no longer live or parties lack legally cognizable interest in outcome; we will not issue mandamus if it would be useless or unavailing). This leaves at issue Requests 39, 65, 70, 71, 83, 85, and 91 from set one and Requests 40, 53, 53a, 53d, and 54 from set two.

However, in its response to Morgan's motion to compel, Volt only challenged certain requests. Of those it challenged in response, only Requests 83, 85, and 91 were included. Nor did Volt challenge any additional requests at the hearing on the motion to compel. "The extraordinary nature of the mandamus remedy and the requirement that a party seeking mandamus relief exercise diligence both mandate that arguments not presented to the trial court cannot first be considered in an original proceeding seeking mandamus." *In re Floyd*, No. 05-16-00491-CV, 2016 WL 2353874, at *1 (Tex. App.—Dallas May 3, 2016, orig. proceeding) (mem. op.); *see **In re Abney***, 486 S.W.3d 135, 138 (Tex. App.—Amarillo 2016, orig. proceeding) ("arguments withheld from the trial court will not first be considered in a petition for writ of mandamus"). Volt was required to first challenge in the trial court all the requests of which it complained before seeking relief in this Court and because it failed to do so, its complaints regarding Requests 39, 65, 70, and 71 from set one and Requests 40, 53, and 54 from set two are not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *see also **In re Doyle***, No. 12-19-00317-CV, 2020 WL 219236, at *1 n.3 (Tex. App.—Tyler Jan. 15, 2020, orig. proceeding) (mem. op.) (declining to consider argument raised for the first time in mandamus proceeding). Accordingly, we limit our review to Requests 83, 85, and 91 from set one.

## Requests 83, 85, and 91

Requests 83 and 85 state as follows:

---

[5] The stipulation assures this Court that Morgan and Holcomb will not file the same or similar requests at any time in the future. *See **In re Contract Freighters***, 646 S.W.3d 810, 814 (Tex. 2022) (per curiam) (orig. proceeding) (noting that plaintiffs withdrew challenged discovery requests but "provided no enforceable assurances via a Rule 11 agreement, a binding covenant, or anything else that would provide sufficient certainty that they would not refile the same or similar requests;" "[u]nilateral and unenforceable withdrawal of discovery, *without any assurances that the withdrawal is definite*, and at the very hour 'appellate courts are looking,' does not moot a discovery dispute") (emphasis added); *see also **Pate v. City of Rusk***, No. 12-22-00118-CV, 2022 WL 3754714, at *6 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op.) ("A stipulation is a type of judicial admission, it must be a clear, deliberate, and unequivocal statement"); ***Richardson v. Mills***, 514 S.W.3d 406, 419 (Tex. App.—Tyler 2017, pet. denied) ("The contents of a stipulation constitute judicial admissions, are conclusive on the issues addressed, and estop the parties from claiming to the contrary").

83. With respect to collisions and/or accidents occurring within Texas that involved a Volt commercial vehicle, documents reflecting each and every personal injury claim that was made against Volt.

85. With respect to incidents occurring within Texas wherein it was alleged that the driver of a Volt commercial vehicle ran a red light, documents reflecting each and every allegation that was made in that regard[.][6]

Volt lodged the following objection to each request:

Objection. This request is not properly limited in title or scope. "It is overbroad, vague, unduly burdensome and harassing. Moreover, it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as such, is tantamount to an impermissible fishing expedition. Volt further objects to the extent this request seeks information protected by the attorney client privilege and/or work product doctrine.

Request 91 and the accompanying objection state:

91. With respect to incidents occurring within Texas that involved the operation of a commercial vehicle, all citations and/or traffic tickets that were issued to a Volt driver.

Response:

Objection. This request in not properly limited in time or scope. It is overbroad, vague and unduly burdensome and harassing. Moreover, it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as such, is tantamount to an impermissible fishing expedition. Further, this information is equally accessible to Plaintiff.

In its response to Morgan's motions to compel, Volt argued that Requests 83, 85, and 91 (among other requests) are overbroad, citing *In re Contract Freighters*, 646 S.W.3d 810 (Tex. 2022) (per curiam) (orig. proceeding) as support.

In *Contract Freighters*, the plaintiffs sued for negligence, negligence per se, and gross negligence after an accident between their vehicle and a tractor trailer owned by Contract Freighters (CFI) and driven by Randall Folks. *Contract Freighters*, 646 S.W.3d at 812. They claimed that CFI was liable for Folks's actions as his employer and because it (1) negligently hired, entrusted, trained, supervised, and retained Folks; (2) negligently established, implemented, and enforced safety policies and procedures; and (3) provided unsafe equipment. *Id*. The plaintiffs served interrogatories, including one that stated, "For the previous 10 years, please list each lawsuit arising out of motor vehicle collisions involving CFI as a Defendant

---

[6] Request 85 contained a subsection (a) that, as previously discussed, Morgan withdrew by stipulation.

providing the jurisdiction, case style, date of collision, and date of the filing of the lawsuit." *Id*. CFI objected to the interrogatory as "overbroad, not likely to lead to relevant evidence, and seeking privileged materials." *Id*. The plaintiffs also sought a third-party deposition of the U.S. Department of Transportation (USDOT) through written questions that requested (1) any records of CFI's actions or omissions that occurred on May 12, 2020 (the date of the accident), and (2) documents concerning CFI in general from January 1, 2010 until October 20, 2020. *Id*. CFI moved to quash the deposition on grounds that the request was overbroad as to scope and time. *Id*. The trial court limited the USDOT request to "similar collisions to the accident at issue occurring in the United States involving CFI vehicles similar to the one driven by Defendant for the past 5 years." *Id*. The plaintiffs revised their USDOT request to seek only documents concerning rear-end collisions involving CFI from May 12, 2015 to May 12, 2020, and retained their request for records concerning CFI's actions or omissions on May 12, 2020. *Id*. CFI again moved to quash and the plaintiffs filed a motion to compel. *Id*. The court denied the motion to quash and limited the interrogatory to lawsuits arising from "rear end collisions occurring 5 years previous to the collision that forms the basis of this suit." *Id*. at 812-13.

The Texas Supreme Court opined that the discovery required CFI and USDOT to produce records for every rear-end accident involving CFI nationwide from May 12, 2015 to May 12, 2020, but such requests were not reasonably tailored to the plaintiffs' claims or the factual circumstances of the accident. *Id*. at 814. The Court further stated that the "requests in this vehicle-collision lawsuit for a list of unrelated lawsuits in which CFI was previously involved and for USDOT records from all fifty states over a five-year period are also overly broad as a matter of law." *Id*. at 815. Additionally, the Court explained that "[s]couring a list of lawsuits and USDOT records from all over the country here, with the hope of finding similarly situated accidents, is likewise an impermissible fishing expedition." *Id*. The plaintiffs failed to show how a nationwide search over a five-year period reasonably advanced their claims against CFI. *Id*. According to the Supreme Court, "such requests, without appropriate limits as to 'time, place or subject matter,' are 'not merely an impermissible fishing expedition; [they are] an effort to dredge the lake in hopes of finding a fish.'" *Id*. (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995)). The Court directed the trial court to vacate its order granting the plaintiffs' motion to compel and denying CFI's objection and motion to quash. *Id*.

In reliance on **Contract Freighters** and referring to certain requests, including Requests 83, 85, and 91, Volt's response stated, "Here, as in *In re Contract Freighters*, there are similar requests from Plaintiff." Volt argued that its objections should be sustained because the requests propounded by Morgan are "similarly overbroad." At the November 8 hearing, Volt's counsel argued that the requests are overbroad because "they're asking for, it's all incidents, ever" in Texas. Counsel later argued, "They're overbroad and they're asking for everything, you know, all incidents, all convictions of any driver, all lawsuits that you've ever had with Volt." Respondent's subsequent order requires Volt to respond to Requests 83, 85, and 91 without limitation.[7]

### *Adequacy of Objections and Evidence*

We first address Morgan's contention that Volt failed to adequately plead and prove its objections, asserted boilerplate, prophylactic objections, and made obscured, insufficiently specific objections.[8]

Texas Rule of Civil Procedure 193.2(a) provides that the objecting party "must state specifically the legal or factual basis for the objection and the extent to which the party is refusing to comply with the request." TEX. R. CIV. P. 193.2(a). "Thus, a responding party who objects to a request for production because is it overbroad, unduly burdensome, vague, ambiguous, or unreasonably cumulative or duplicative should explain why the discovery request suffers from each asserted deficiency." **In re Park Cities Bank**, 409 S.W.3d 859, 876 (Tex. App.—Tyler 2013, orig. proceeding). Nevertheless, overbroad requests for irrelevant information are improper whether they are burdensome or not, so the objecting party is not required to detail what they might encompass. **In re Allstate Cty. Mut. Ins. Co.**, 227 S.W.3d 667, 670 (Tex. 2007) (per curiam) (orig. proceeding). Requests that are not reasonably tailored to include matters relevant to the case, i.e., the relevant time, place, or subject matter, are overbroad as a matter of

---

[7] Morgan maintains that Volt offered no substantive analysis to Respondent in support of its arguments. While Volt's response may not be a model of perfection, with respect to the specific requests it challenged, Volt argued the requests were overbroad and presented supporting authority. The record of the November 8 hearing does not reflect that Respondent suffered any confusion over the complaints before him. *See* TEX. R. APP. P. 33.1 (a complaint is preserved for appellate review when made to the trial court by a timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

[8] Morgan also contends that Volt made needless assertions of privilege. We do not address this argument because Volt does not raise any contentions on the basis of privilege. *See* TEX. R. APP. P. 47.1.

law. ***Sun Coast Res., Inc.***, 562 S.W.3d at 147.  As set forth above, Volt objected to these three requests as overbroad, specifically objecting that Requests 83, 85, and 91 are not properly limited in time or scope.  Because a discovery request is overbroad as a matter of law when unlimited as to the relevant time, place, or subject matter, Volt was not required to offer further detail in its objections.  *See **Allstate Cty. Mut. Ins. Co.***, 227 S.W.3d at 670 (rejecting contention that discovery objections not preserved where objecting parties failed to provide details regarding why discovery was burdensome); *see also **Sun Coast Res., Inc.***, 562 S.W.3d at 147.

Likewise, "[e]vidence is not necessary to support an objection if the discovery requests themselves demonstrate overbreadth as a matter of law." ***In re Wal-Mart Stores, Inc***., 545 S.W.3d 626, 634 (Tex. App.—El Paso 2016, orig. proceeding); *see **United Fire Lloyds***, 578 S.W.3d at 580-81 ("A party objecting or asserting a privilege must present any evidence *necessary* to support the objection or privilege") (emphasis added); ***Brookshire Grocery***, 2006 WL 2036569, at *2 ("Where a request is overly broad as a matter of law, the presentation of evidence is unnecessary to decide the matter"); Tex. R. Civ. P. 193.4(a) ("party making the objection or asserting the privilege must present any evidence *necessary* to support the objection or privilege") (emphasis added).  Volt's objections are capable of resolution by examining the language of the challenged discovery requests.  *See **Wal-Mart Stores, Inc***., 545 S.W.3d at 635 (where overbreadth and irrelevance objections could be resolved by examining language of discovery requests, objecting party was not required to present evidence in support of such objections).  Accordingly, Volt was not required to present evidence in support of its objections. *See **id**.; see also **Brookshire Grocery***, 2006 WL 2036569, at *2.

*Overbreadth*

We now address whether Requests 83, 85, and 91 are overbroad as a matter of law.  Volt argues that RPIs "are being allowed to troll through 'any and all records' related to every single accident involving Volt anywhere in Texas rather than just an accident involving a red light and/or braking issues."  Volt further complains that the requests are too broad in time.  We agree with Volt for two reasons.

First, none of the three requests contains a time limitation.  "Discovery requests that are overbroad in time encompass time periods beyond those at issue in the case." ***In re Stagner***, No. 01-18-00758-CV, 2020 WL 370565, at *4 (Tex. App.—Houston [1st Dist.] Jan. 23, 2020, orig. proceeding) (mem. op.).  "[E]ven requests for five years' worth of information have been held

12

overbroad." ***Id***. (citing ***Allstate Cty. Mut. Ins. Co.***, 227 S.W.3d at 669). Volt's counsel represented at the November 8 hearing that Volt has existed since 2016. The collision occurred in 2019 and Henderson had worked for Volt approximately one year before the accident. Morgan asserts that the applicable time-period is "perhaps less than three years, since Volt didn't exist until sometime in 2016 whereas the accident was in August of 2019." But because they are not expressly limited to collisions, accidents, and/or incidents that occurred during a specific time period, Requests 83, 85, and 91, as written, encompass documents from 2016 to date, an approximate seven-year time-period. Absent a time limitation, these requests are overbroad as a matter of law. *See* ***Nat'l Lloyds Ins. Co.***, 507 S.W.3d at 226; *see also* ***Aethon***, 2022 WL 242902, at \*7; ***United Fire Lloyds***, 578 S.W.3d at 580; ***Brookshire Grocery Co.***, 2006 WL 2036569, at \*2.

Second, except for Request 85, Requests 83 and 91 contain no limitation as to subject matter. "Evidence of other accidents, near accidents, or related similar events is probative evidence in Texas courts, provided an adequate predicate is established." ***Brookshire Grocery***, 2006 WL 2036569, at \*4. "More specifically, similar events are admissible if the earlier accidents occurred under reasonably similar but not necessarily identical circumstances." ***Id***. Generally, "reasonably similar" means the same type of occurrence. ***Sun Coast***, 562 S.W.3d at 148. "Prior to admission of similar events, the plaintiff must first establish (1) a predicate of similar or reasonably similar conditions; (2) connection of the conditions in some special way; or (3) that the incidents occurred by means of the same instrumentality." ***Brookshire Grocery***, 2006 WL 2036569, at \*4. "Evidence of other accidents that are so dissimilar to the present alleged incident as to be irrelevant are not discoverable." ***Sun Coast***, 562 S.W.3d at 150.

Here, Request 85 is limited to incidents wherein a Volt commercial driver ran a red light. The RPIs allege that Henderson ran a red light, which led to the collision. We conclude that, aside from the lack of a time limit, Request 85 is sufficiently limited to similar or reasonably similar circumstances as those at issue in this case. *See* ***In re UPS, Inc.***, No. 03-22-00526-CV, 2022 WL 13614008, at \*1-2 (Tex. App.—Austin Oct. 21, 2022, orig. proceeding) (mem. op.) (where UPS employee failed to yield right of way from stop sign and struck plaintiff, discovery order requiring production of information regarding accident claims and suits in which a UPS vehicle allegedly failed to yield the right of way at a traffic control device in Texas for the five years preceding the lawsuit did not constitute impermissible fishing expedition); *see also* ***Sun***

*Coast*, 562 S.W.3d at 146 (we evaluate relevancy on a case-by-case basis by considering, among other things, the claims as pleaded and the instrumentality of the alleged injury).

Requests 83 and 91 contain no subject matter limitation. Request 83 encompasses *all* personal injury claims resulting from a Volt commercial vehicle collision or accident that occurred under *any circumstance* in Texas and Request 91 encompasses *all* traffic citations and tickets issued to a Volt driver while operating a commercial vehicle under *any circumstance* in Texas. Morgan argues that Request 91 is "highly relevant to fully and fairly evaluating Volt's policies and practices governing driver supervision, and relevant to the subjective element of gross negligence."[9]

But RPIs are only entitled to discover information regarding accidents that occurred under similar or reasonably similar circumstances. *See Sun Coast*, 562 S.W.3d at 150; *see also Brookshire Grocery*, 2006 WL 2036569, at *4. Respondent's order requires Volt to provide documents responsive to Requests 83 and 91, no matter how mundane or remote, regardless of the topic, content, or subject, including information unrelated to the subject matter of the RPIs' claims. "[R]equests for document production may not be used simply to explore." *Hall*, 909 S.W.2d at 492. Yet, the subject matter of the information and documents sought in Requests 83 and 91 is not limited to incidents involving circumstances necessarily relevant to the underlying lawsuit; thus, Requests 83 and 91, as written, are not sufficiently limited as to subject matter. *See Sun Coast*, 562 S.W.3d at 148, 150. Thus, they are overbroad as a matter of law. *See Aethon*, 2022 WL 242902, at *7; *see Sun Coast*, 562 S.W.3d at 150; *see generally Contract Freighters*, 646 S.W.3d at 814.

**Summation**

Morgan could have drawn Requests 83, 85, and 91 from set one more narrowly and still obtained the necessary pertinent information. But the requests as they stand are overbroad, lacking reasonable limitations as to time and subject matter. *See CSX Corp.*, 124 S.W.3d at 153; *see also United Fire Lloyds*, 578 S.W.3d at 580; *Brookshire Grocery*, 2006 WL 2036569, at *2. Accordingly, Respondent abused his discretion by ordering Volt to respond to Requests 83, 85, and 91 from set one without limitation.

---

[9] Morgan does not offer argument regarding Request 83.

## DISPOSITION

Having concluded that Respondent abused his discretion by granting Morgan's motions to compel with respect to Requests 83, 85, and 91 from set one, without temporal and subject matter limitations, we ***conditionally grant in part*** Volt's petition for writ of mandamus. We direct Respondent to vacate only that portion of the January 3, 2023, order compelling responses to Requests 83, 85, and 91 from set one, and in its stead, to issue an order imposing limits on these requests and compelling Volt to respond to the production requests as limited. Volt's petition is ***denied*** in all other respects. We ***lift*** our stay of February 9, 2023.

GREG NEELEY
Justice

Opinion delivered April 5, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# <u>ORDER</u>

**APRIL 5, 2023**

**NO. 12-23-00047-CV**

**VOLT POWER, LLC,**
Relator
V.

**HON. DEAN FOWLER,**
Respondent

---

## ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by Volt Power, LLC; who is the relator in appellate cause number 12-23-00047-CV and the defendant in trial court cause number 587-19, pending on the docket of the 115th Judicial District Court of Upshur County, Texas. Said petition for writ of mandamus having been filed herein on February 9, 2023, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted in part***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate only that portion of the January 3, 2023, order compelling responses to Real Party in Interest Quandel Ray Morgan's First Set of Requests for Production 83, 85, and 91, and in its stead, to issue an order imposing limits on these requests and compelling Volt to respond to the production requests as limited; the writ will not issue unless the HONORABLE DEAN

FOWLER fails to comply with this Court's order within ten (10) days from the date of this order.

The petition is *denied* in all other respects.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*